## A05A2112. HOLLOWAY v. THE STATE.
(629 SE2d 447)

RUFFIN, Chief Judge.

A jury found Jonathan Lee Holloway guilty on one count of aggravated child molestation, three counts of child molestation and one count of incest. Holloway appeals, asserting that the trial court erred by: (1) failing to quash the indictment because the time period during which the offenses allegedly occurred was not more specific; (2) failing to grant a continuance when new evidence became known before trial; (3) failing to admit allegations the victim had been molested on another occasion; (4) allowing evidence that the victim had not previously been molested; (5) instructing the jury on aggravated child molestation and sodomy; and (6) failing to strike a juror for cause. For reasons that follow, we find no error and affirm.

Viewed in a light most favorable to the verdict,[1] the evidence shows that Holloway and his wife Joann lived with her eight-year-old daughter M. B. R. in Upson County between October 2002 and October 2003. Holloway and Joann permanently separated on October 5, 2003.

---

[1] See *Smith v. State*, 276 Ga. App. 677 (1) (624 SE2d 272) (2005).

Holloway owned the house next door to his residence and used it as rental property. In November 2003, Howard Mitchell and his daughter Kathy were at the rental house preparing to move in. Holloway kept football and baseball cards in a card catalog file in the rental house. Holloway had instructed Mitchell to take the file outside and burn it. While looking through the contents of the file, Kathy discovered a series of Polaroid photographs. One photograph depicted the lower portion of an adult male's naked body, including the external genitalia; three photographs depicted the lower portion of a prepubescent female's naked body, including the external genitalia and/or buttocks; and four photographs depicted sexual acts, including intercourse, between the adult male and the prepubescent female. The faces of the subjects were not visible in the photographs. Mitchell, who is M. B. R.'s uncle, testified that he knew the girl in the photographs was M. B. R. and that the male in the photographs "looked like" Holloway based on body build.

Mitchell showed the photographs to Barbara Corley, who was Joann's friend. The next day, Joann and M. B. R. went to Corley's home. When Corley asked M. B. R. if anyone had taken pictures of her without her clothes on, M. B. R. began to cry and said that Holloway had done so. Corley then showed M. B. R. the photographs, and M. B. R. identified the adult male in the photographs as Holloway and the young female as herself.

Law enforcement was notified, and M. B. R. was interviewed that day by Sergeant Jeff Taylor. Using anatomically correct diagrams, she told Taylor that Holloway had touched and licked her genitals and had penetrated her with his penis. M. B. R. stated that the penetration hurt and that she told Holloway to stop but he did not. She also said that Holloway took Polaroid photographs of these events. She said that this took place in Holloway's bedroom, which was consistent with the photographs introduced at trial.

M. B. R. was subsequently interviewed by an expert in conducting forensic interviews with children. The interview was videotaped and portions were played for the jury. Additionally, Linda Bolton, a psychologist who was treating M. B. R., testified that M. B. R. told her that in July 2003 Holloway had taken her into his bedroom twice when her mother was away from the house and had touched her. M. B. R. also stated that she had touched Holloway's penis and that he had taken Polaroid photographs of her. A doctor who examined M. B. R. testified that M. B. R.'s hymen showed damage that was consistent with penetration and sexual abuse.

M. B. R. testified at trial, identifying the Polaroid photographs as being of her and Holloway and taken by Holloway in his bedroom. She stated that the touchings took place on more than one occasion, as she

was wearing different clothes in one photograph. She confirmed that Holloway had painfully penetrated her.

Joann testified that the photographs were taken in the bedroom she and Holloway shared; she recognized the window fan and bed sheets. She also recognized M. B. R.'s clothes in the various photographs. Joann initially identified the adult male in the photographs as Holloway, although at trial she expressed some doubt that it was him. Joann stated that Holloway was home alone with M. B. R. at various times and that he had access to a Polaroid camera. She further testified that she had never left M. B. R. alone with a man other than Holloway at the house which they shared.

1. Holloway was indicted for one count of aggravated child molestation, three counts of child molestation, and one count of incest. Each count alleged that the crimes occurred between the dates of October 1, 2002 and November 1, 2003. Holloway contends that the trial court erred in failing to quash the indictment because the State could have narrowed the range of dates alleged in the indictment, but did not do so. Holloway points to the fact that before trial the State learned of evidence that the alleged molestation did not take place until at least the summer of 2003.

Because Holloway has already been tried and convicted of the alleged offenses, our review is limited to determining whether he was harmed by imperfections in the indictment.[2] The relevant inquiry is whether the failure to narrow the range of dates alleged in the indictment "materially affected his ability to present a defense."[3] Holloway argues that he was not able "to adequately investigate and prepare a possible alibi defense, due to the lengthy period over which the acts were alleged" to have occurred. Holloway has not demonstrated, however, that narrowing the dates in the indictment to begin in the summer of 2003 would have enabled him to present an alibi defense. We have held that an indictment covering a period of approximately five years[4] did not materially affect the defendant's ability to present a defense to molestation charges. Accordingly, Holloway has failed to show that he was prejudiced by the trial court's refusal to quash the indictment.

2. Similarly, Holloway argues that the trial court erred by failing to grant him a continuance when he learned just prior to trial that M. B. R. told Bolton that the molestation took place in July 2003. It

[2] See *White v. State*, 269 Ga. App. 113, 115 (603 SE2d 686) (2004).

[3] *Gentry v. State*, 235 Ga. App. 328, 330 (3) (508 SE2d 671) (1998).

[4] See *Davidson v. State*, 231 Ga. App. 605, 608 (2) (b) (499 SE2d 697) (1998).

is axiomatic that we will not reverse a trial court's ruling on a motion for a continuance unless the record shows a manifest abuse of discretion.[5]

Holloway argues that a continuance would have allowed him to further investigate "the possibility of an alibi defense." Nonetheless, he has made no attempt to show that he, in fact, had an alibi or to suggest how additional time might have benefitted him.[6] "Where there is no indication that a continuance would have benefit[t]ed the defendant, there is no showing of necessity and no abuse of discretion."[7] Thus, the trial court did not abuse its discretion in denying Holloway's motion for a continuance.[8]

3. Holloway contends the trial court should have allowed him to introduce evidence that M. B. R. previously alleged that someone else molested her on a different occasion. The trial court excluded this evidence as irrelevant because M. B. R. never claimed that the crimes in this case were committed by anyone other than Holloway, and because the evidence would not show that M. B. R. had ever made a false accusation. Holloway argues that this evidence is relevant both to impeach a statement supposedly made by M. B. R. that she had not been molested prior to the events at issue here and to provide an alternative explanation for the damage to M. B. R.'s hymen.

Evidence of other molestation of the victim is admissible in a child molestation case

(a) to show that someone other than defendant caused the injuries to the child; (b) to show lack of victim credibility if the victim's prior allegations of molestation were false; and (c) to show other possible causes for the symptoms exhibited.[9]

Holloway seeks to demonstrate that M. B. R. lacks credibility by impeaching her statement that she had not been molested at another time. The trial court should have permitted Holloway to show that M. B. R. made an allegation of molestation that she now denies, as it bears directly on her credibility.[10] Nonetheless, given the overwhelming evidence against Holloway, the trial court's error was harmless. Even if the jury had not found M. B. R. credible, despite the consistency of her allegations against Holloway, there was photographic

---

[5] See *Strickland v. State*, 212 Ga. App. 170, 172 (3) (441 SE2d 494) (1994).

[6] See *Gentry v. State*, 255 Ga. App. 255, 257 (2) (564 SE2d 845) (2002).

[7] *Strickland*, supra at 173 (3) (a).

[8] See *Mosley v. State*, 187 Ga. App. 70, 70-71 (1) (369 SE2d 345) (1988).

[9] (Footnotes omitted.) *Wand v. State*, 230 Ga. App. 460, 462 (2) (b) (496 SE2d 771) (1998) (physical precedent only).

[10] See *Tyson v. State*, 232 Ga. App. 732, 733 (2) (503 SE2d 640) (1998).

evidence that she was molested in Holloway's bedroom. Both her mother and Mitchell identified her in the photographs, and the State introduced a shirt belonging to her that was identical to one appearing in one of the photographs. A Polaroid camera like that used to take the photographs was found in Holloway's home. M. B. R.'s mother testified that she had not left M. B. R. alone in the house with any man other than Holloway. And the photographs were found in a house owned by Holloway, in a file containing his personal items. Because there was ample evidence for the jury to convict Holloway even if he had been allowed to introduce such impeachment evidence, we find no harm.

Furthermore, pretermitting whether the evidence Holloway seeks to have admitted is relevant to provide an alternative explanation for the injury to M. B. R.'s hymen, we find that any error in excluding it for this purpose was harmless as well.[11] M. B. R. consistently stated — and testified at trial — that Holloway had penetrated her. And even if the jury did not find her credible, there was a photograph showing sexual intercourse between M. B. R. and Holloway. Again, this is ample evidence of penetration by Holloway, even if he were able to demonstrate that M. B. R. had also been penetrated by another.[12] Under these circumstances, any error in failing to admit such evidence is harmless.[13]

4. Holloway next argues that the trial court erred in permitting the State to play a portion of the videotaped interview with M. B. R. in which she "essentially implied or asserted that she had never been molested or otherwise engaged in any sexual activity prior to these alleged incidents." But Holloway did not object to the playing of this portion of the tape in his pretrial motion to suppress, at a pretrial hearing, or when it was played for the jury. "To preserve an objection upon a specific ground for appeal, the objection on that specific ground must be made at trial, or else it is waived."[14] We will not reverse a trial court's decision to admit evidence unless the party objecting shows error triangulation, that is, "(1) error, (2) contemporaneous objection, and (3) harm as a result of the error."[15] Because

---

[11] See *Brown v. State*, 275 Ga. App. 281, 288-289 (4) (620 SE2d 394) (2005) (physical precedent only).

[12] See *Putnam v. State*, 264 Ga. App. 810 (2) (592 SE2d 462) (2003) (testimony of the child alone is sufficient to support convictions for child molestation and aggravated child molestation).

[13] See *Hanson v. State*, 263 Ga. App. 45, 46-47 (1) (587 SE2d 200) (2003).

[14] *Mintz v. State*, 273 Ga. App. 211, 212 (615 SE2d 152) (2005).

[15] *Yang v. Washington*, 256 Ga. App. 239, 243 (2) (568 SE2d 140) (2002).

Holloway failed to preserve this objection by contemporaneous objection at trial, he has waived it on appeal.[16]

5. In two enumerations of error, Holloway contends that the trial court erred in charging the jury with respect to aggravated child molestation and in defining sodomy. We disagree.

Under OCGA § 16-6-4 (c), "a person commits the offense of aggravated child molestation when such person commits an offense of child molestation which act physically injures the child or involves an act of sodomy." In this case, the indictment alleged that Holloway committed aggravated child molestation by "perform[ing] a sexual act, to-wit: oral sex involving the sex organs of [M. B. R.], a child under the age of 16 years[,] and the mouth of the said accused." The indictment did not allege aggravated child molestation resulting from a sexual act that physically harmed the child. Nonetheless, the trial court charged the jury on the entire definition of aggravated child molestation, including that the offense could be committed through child molestation causing physical injury.

Where the indictment charges a defendant with having committed a crime in a specific manner, "[t]he giving of a jury instruction which deviates from the indictment violates due process where there is evidence to support a conviction on the unalleged manner of committing the crime and the jury is not instructed to limit its consideration to the manner specified in the indictment."[17] Here, evidence admitted at trial would support a conviction on aggravated child molestation resulting from physical injury to the child; M. B. R. testified that Holloway's penetration hurt her, and the examining physician testified that M. B. R.'s hymen had been damaged.[18] Immediately before the trial court defined aggravated child molestation, however, it indicated that sodomy "is the underlying crime alleged in the aggravated child molestation" charge against Holloway. The jury was also instructed that the State had the burden of proving "every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt." And it is clear that the jury had the indictment during deliberations.

Reading the jury instructions as a whole, we conclude that sufficient limiting instructions were given to the jury and that "[u]nder these circumstances, no danger existed that the charge might have misled the jury to believe that it could convict [Holloway] of aggravated child molestation based on facts not charged in the

---

[16] See *Dyer v. State*, 257 Ga. App. 267, 268 (2) (570 SE2d 692) (2002).

[17] *Harwell v. State*, 270 Ga. 765, 766 (1) (512 SE2d 892) (1999).

[18] See *Perguson v. State*, 221 Ga. App. 212, 214 (1) (470 SE2d 909) (1996).

indictment."[19] Similarly, we find that the other claimed errors in the jury charge on aggravated child molestation were harmless in light of the limiting instructions given.[20] It follows that these enumerations of error lack merit.[21]

6. Holloway argues that the trial court erred in attempting to rehabilitate a juror and failing to strike her for cause. We will uphold the trial court's decision whether to dismiss a prospective juror for cause "absent some manifest abuse of discretion."[22] Holloway alleges that Juror Smith should have been dismissed for cause because she was a long-time employee of the Department of Family and Children Services ("DFCS") who conducted child protective services investigations and had worked with abused children, law enforcement and the district attorney's office. Holloway contends that, notwithstanding Juror Smith's assertion that she could be fair and impartial, these facts demonstrate an inherent and obvious bias for the State.

In order for a prospective juror to be dismissed for cause, the defendant must show

> that the juror has formed an opinion on the guilt or innocence of the accused which is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence.[23]

The trial court "may not rely solely on a prospective juror's assurances of his impartiality where the record shows on its face that the juror has a compelling bias or interest in the outcome of the case."[24]

Upon reviewing the record, we disagree with Holloway that Juror Smith was obviously biased toward the State. While Juror Smith had worked with DFCS for 34 years, she stated that this

---

[19] *Joiner v. State*, 257 Ga. App. 375, 377 (2) (571 SE2d 430) (2002); compare *Perguson*, supra at 214-215 (reversing conviction for aggravated child molestation where defendant indicted for aggravated child molestation involving sodomy and trial court charged jury on entire Code section with no limiting instruction).

[20] Holloway argues that the jury charge was also flawed because it expanded the indictment by (1) stating that an element of the crime was that it was committed "with the intent to arouse or satisfy the sexual desires of *either the child or* the person" (emphasis supplied) when the indictment only charged intent to arouse Holloway's sexual desires; (2) including in its definition of sodomy "a sexual act involving the sex organs of one and the mouth *or anus* of another" (emphasis supplied) when the indictment only charged that Holloway had engaged in oral sex; and (3) stating that sodomy did not require penetration, which might have raised issues outside the scope of the indictment.

[21] See *Howell v. State*, 278 Ga. App. 634 (629 SE2d 398) (2006).

[22] *Lewis v. State*, 279 Ga. 756, 760 (3) (a) (620 SE2d 778) (2005).

[23] (Punctuation omitted.) *McClain v. State*, 267 Ga. 378, 380 (1) (a) (477 SE2d 814) (1996).

[24] Id. at 380-381.

experience would not prevent her from listening to the evidence fairly because "in the course of my investigations we always look at the evidence that we have to determine if the case is substantiated or not." She had worked with Sergeant Taylor and the district attorney's office in the past, but had also worked with Holloway's counsel on several DFCS cases. She no longer worked in Upson County at the time of trial. And before being called as a juror, she did not know anything about the case other than that Holloway had been arrested, which she learned from the news media. Upon repeated questioning, Juror Smith insisted that she had not formed any opinion that would affect her ability to sit as a fair and impartial juror in the case. The trial court asked her "can you listen to the evidence in this case and base your decision upon the evidence that comes in and the issues of law that I give you?," to which she responded, "I think so." When Holloway's counsel subsequently asked Juror Smith if she could "be fair and impartial," she replied, "Yes, sir."

Being employed by the State and having a familiarity with law enforcement or the prosecution do not necessarily indicate bias on the part of a prospective juror.[25] Our Supreme Court has held that the trial court did not abuse its discretion in seating as a juror in a rape and murder trial "a forensic expert with the State Crime Lab who has testified as an expert for the prosecution in Georgia in 900 to 1,000 cases and who was acquainted with various witnesses."[26] And this case is distinguishable from *Kier v. State*,[27] which Holloway cites in support of his argument that there was an " 'inherent and obvious' " issue of fairness in seating Juror Smith. In *Kier*, the prospective juror was an employee at the jail where the defendant had been housed prior to trial and had personal knowledge of the defendant.[28] We held that "in this unique and limited circumstance," the prospective juror should have been stricken for cause.[29] However, Juror Smith had no personal knowledge of Holloway or of any of the facts related to the case. She also consistently expressed an ability to decide the case on the merits. Under these circumstances, the trial court did not abuse its discretion in refusing to dismiss her for cause.[30]

Moreover, this is not a case where the trial court made a cursory attempt at rehabilitation through a "talismanic question."[31] The trial

---

[25] See *Braley v. State*, 276 Ga. 47, 51 (15) (572 SE2d 583) (2002); *Martinez v. State*, 259 Ga. App. 402, 403-404 (2) (577 SE2d 82) (2003).

[26] *Wellons v. State*, 266 Ga. 77, 84 (6) (a) (463 SE2d 868) (1995).

[27] 263 Ga. App. 347 (587 SE2d 841) (2003).

[28] See id. at 349.

[29] Id. at 349-350.

[30] See *Wellons*, supra.

[31] *Kim v. Walls*, 275 Ga. 177, 178-179 (563 SE2d 847) (2002).

court asked Juror Smith one question after she had already been asked twice by Holloway's counsel if she could be an impartial juror and indicated that she could be. And the trial court did not cut short the voir dire of Juror Smith; indeed, Holloway's counsel continued to question her and to ask whether she could be "fair and impartial." She continued to assert that she could be. The trial court thus permitted counsel to conduct adequate voir dire and did not abuse its discretion in denying Holloway's request to disqualify Juror Smith.[32]

*Judgment affirmed. Johnson, P. J., and Barnes, J., concur.*

DECIDED MARCH 15, 2006 —
RECONSIDERATION DENIED APRIL 11, 2006.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*William A. Adams, Jr.*, for appellant.
*Scott L. Ballard, District Attorney, James E. Hardin, Robert H. English, Cindy L. Spindler, Assistant District Attorneys*, for appellee.

