## A09A1244. JONES v. THE STATE.
### (684 SE2d 411)

PHIPPS, Judge.

After a jury trial, Eric Lamar Jones was convicted of (a) child molestation, by attempting to place his penis in C. L.'s vagina; and (b) aggravated child molestation, by placing his penis in her anus. Jones seeks relief from his judgment, asserting claims of insufficient evidence, impermissible testimony, erroneous jury instruction, and juror misconduct. Because Jones has demonstrated no reversible error, we affirm.

1. Jones contends that the state failed to prove beyond a reasonable doubt that he committed the offenses. When an appellant challenges the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[1]

So viewed, the evidence showed that the sexual molestation occurred one day in November 2006. Jones was seventeen years old and living with his parents and younger siblings; C. L. was seven years old. Jones's mother and C. L.'s mother were very close friends, and their families often visited one another's residences in Hinesville. The offenses underlying this case were committed during one such visit at the Joneses' residence.

C. L. testified that, while they were in a bedroom, Jones placed his penis in her vagina; and while they were in another bedroom, Jones placed his penis in her anus. During that same visit, C. L. described, Jones put his fingers on her front private area, while she was sitting on his lap on the living room sofa. Jones told C. L. not to tell anyone.

C. L.'s mother and father testified that, later that evening, C. L. described to them what Jones had done. They summoned Jones's parents back to their home, where C. L. repeated the allegations to them. Jones's mother testified that when she and her husband confronted their son that same night, Jones denied any inappropriate contact with C. L. Jones's mother further testified that, the next day, she told C. L.'s mother that her son had denied all of the allegations.

---

[1] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979) (citation and emphasis omitted).

But according to C. L.'s parents, Jones's mother reported to them that next day that, when confronted, their son confessed to them: "I did it." C. L.'s father elaborated at trial that Jones's mother's report was that Jones had confessed only to the sofa incident.

The state also called Gloria Christ, a mutual acquaintance of C. L.'s mother and Jones's mother. Gloria Christ was a minister, and the two mothers had previously volunteered their time to work at the Heart of Christ Ministry, an entity operated by Gloria Christ that distributed donated money, food, clothing, and other such items to individuals seeking help. Gloria Christ testified that Jones's mother had confided in her that Jones had confessed to her (Jones's mother) about C. L.'s allegations, although Jones's mother never specified any details. Jones's mother maintained at trial, however, that her son never confessed to her about any of C. L.'s allegations and that she had not stated otherwise either to C. L.'s parents or to Gloria Christ.

The state called several witnesses to whom C. L. had described being molested by Jones. The detective assigned to investigate the case testified about his interview with C. L. a few days after the date in question, and a video recording of the interview was played to the jury. It showed C. L. recounting the same sexual acts described in her trial testimony. The state also called C. L.'s school counselor, who testified that C. L. told her that she had been molested by Jones; and C. L.'s school teacher, who testified that C. L. had told her that she had received a "bad touch."

On appeal, Jones points to what he claims are evidentiary weaknesses and inconsistencies in the state's case. "However, resolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are the province of the factfinder, not this [c]ourt."[2] "On appeal, [Jones] no longer enjoys the presumption of innocence."[3] The evidence, viewed in the light most favorable to the prosecution, was sufficient for a rational trier of fact to find Jones guilty beyond a reasonable doubt of the crimes of which he was convicted.[4]

2. Jones contends that the trial court erred by refusing to grant his motion for mistrial, which was based upon testimony he claims constituted an impermissible comment on his silence. During cross-examination of the detective, in an apparent effort to show that the

---

[2] *Dean v. State*, 273 Ga. 806, 807 (1) (546 SE2d 499) (2001) (citation and punctuation omitted).

[3] *Brown v. State*, 295 Ga. App. 542, 544 (672 SE2d 514) (2009).

[4] See OCGA §§ 16-6-4 (defining child molestation and aggravated child molestation); 24-4-8 ("The testimony of a single witness is generally sufficient to establish a fact."); *Lucas v. State*, 295 Ga. App. 831, 832 (1) (673 SE2d 309) (2009); *Brown*, supra.

state had failed to adequately investigate the case, defense counsel asked, "Did you attempt to interview [Jones's younger sibling]?" The detective answered, "How could I interview [her] when her mother wouldn't let me talk to Eric Jones[?]"

Jones asserts that the detective's answer was unresponsive and impermissibly showed that he (Jones) had invoked his right to remain silent at the time of his arrest.[5] We agree that the detective's rhetorical question was unresponsive — the detective was asked what *he* did, not what the defendant's mother did or did not do.[6] Fairly construed, however, while the remark may be viewed as evidence that Jones's mother had thwarted the detective's attempt to interview her teenaged son, it fell short of implying further that Jones had elected to remain silent.[7] Because Jones thus has failed to show that a mistrial was essential to preserve his right to a fair trial, we conclude that the trial court did not abuse its discretion by refusing to grant the motion for mistrial.[8]

3. Jones contends that the trial court erroneously charged the jury regarding the testimony of a child victim.

> The trial of this case occurred in [May 2008]. Thus, this issue is controlled by the 2007 amendment to OCGA § 17-8-58, effective July 1, 2007. Under subsection (a) of that Code section, a criminal defendant is required to "inform the court of the specific objection and the grounds for such objection before the jury retires to deliberate." Subsection (b) precludes appellate review where there is a "[f]ailure to object in accordance with subsection (a)." As [Jones] did not specifically object to the charge on [a child victim's] testimony at the conclusion of the jury charge, he has waived his right to urge error on appeal.[9]

Although Jones's attorney purported to reserve any objection, "at the time of trial, a 'reservation of objection' could no longer be used

---

[5] See *Whitaker v. State*, 283 Ga. 521, 524 (3) (661 SE2d 557) (2008) (fact that a defendant has exercised the right to remain silent is not to be used against the defendant at trial).

[6] See, e.g., *Newton v. State*, 226 Ga. App. 501, 502 (1) (486 SE2d 715) (1997).

[7] Compare *Johnson v. State*, 293 Ga. App. 728, 730 (2) (a) (667 SE2d 637) (2008) (finding prosecutor's questioning and resulting testimony improper, where through cross-examination of defendant's mother, the prosecutor presented evidence that defendant had failed to come forward to authorities, despite his knowledge that the police wanted to speak with him regarding the crimes).

[8] *Smith v. State*, 284 Ga. 17, 23-24 (6) (663 SE2d 142) (2008) (whether to grant or deny a motion for mistrial is necessarily a matter largely within the discretion of the trial court, and the trial court's denial of a motion for mistrial should not be disturbed by the appellate courts unless a mistrial is essential to the preservation of the right to a fair trial).

[9] *Metz v. State*, 284 Ga. 614, 619-620 (5) (669 SE2d 121) (2008).

to preserve objections to the charge."[10]

4. Jones contends that the trial court erred by denying his motion for new trial, which alleged juror misconduct. More specifically, Jones complains that a juror failed to disclose during voir dire that he knew Gloria Christ.

At the motion for new trial hearing, the juror testified that he did not realize during voir dire that he knew someone named "Gloria Christ." When she walked onto the witness stand, however, he realized that he did know her, but by a different name, "Gloria Winters." He explained that he had not called this realization to anyone's attention during the trial because, as a first time juror, he simply had not known what, if anything, to do. The juror stated that he had not been trying to hide anything. He recounted at the new trial hearing his prior dealings with the woman he knew as "Gloria Winters." The juror was a minister. And in that capacity, on a monthly basis over a two- to four-year period, he had taken various donations to Winters for her ministry. The juror further stated that, at the time of voir dire, he was aware of the Heart of Christ Ministry.

As Jones points out, for a defendant to secure a new trial because a juror did not give a correct response to a question posed on voir dire, "a defendant must show that (1) the juror failed to answer honestly a material question on voir dire and (2) a correct response would have provided a valid basis for a challenge for cause."[11]

> The rationale for this rule is that a trial represents an important investment of private and social resources, and it ill serves the important end of finality to wipe the slate clean simply to recreate the peremptory challenge process because counsel lacked an item of information which objectively he should have obtained from a juror on voir dire examination.[12]

(a) We consider the first portion of the inquiry: whether Jones showed that the juror failed to answer the question honestly. During voir dire, the prosecuting attorney posed to the panel whether anyone knew "Ms. Gloria Christ of the Heart of Christ Ministry? It was recently operated here in town. I think it's closed down now. Does anybody know Ms. Christ?" One individual, not the individual at issue here, revealed, "She's my former wife's friend. We used to go

---

[10] *Marshall v. State*, 285 Ga. 351, 353 (4) (b) (676 SE2d 201) (2009) (citing OCGA § 17-8-58, as amended July 1, 2007).

[11] *Glover v. State*, 274 Ga. 213, 214 (2) (552 SE2d 804) (2001) (footnote omitted); see *Sears v. State*, 270 Ga. 834, 840 (2) (514 SE2d 426) (1999).

[12] *Glover*, supra (punctuation and footnote omitted).

up there where she had a shop and my wife used to help her out distribute food and clothes to people that need it." Defense counsel also probed the matter by stating to the panel:

The question was asked if anybody knew Ms. Gloria Christ who runs the Heart of Christ Mission [sic], or at least used to run it in Hinesville. She had a prior name before she changed her last name to Christ. Her name was Gloria Winters. Does anybody have any recollection of that name that they would know a Gloria Winters?

No one responded.

Although the trial court's order summarily rejected Jones's motion for new trial, the transcript of the new trial hearing reveals that the court found that Jones had failed to show that the juror had answered the questions dishonestly. In particular, the court noted, "[The juror's] testimony is that he didn't hear Winter[s] and he didn't know anything about it until he saw her walk in the courtroom, not during the voir dire." The court also stated its finding that the juror

did not know who Ms. Gloria Winter[s], also known as Gloria Christ, was at the time of voir dire. That he had no motive to mislead or be dishonest at — during the voir dire and that he later only recognized Ms. Winter[s] and recognized that he knew her when she walked in as a witness into the courtroom. . . .

Jones maintains to this court that the juror was dishonest by failing to respond when asked, by way of numerous references, whether he knew Gloria Christ. This assertion puts in issue the credibility of the juror as a witness at the motion for new trial hearing. But it was the trial court's role to determine the juror's credibility;[13] this court accepts a trial court's factual findings and credibility determinations unless clearly erroneous.[14]

Guided by these principles, we cannot disturb the trial court's findings regarding the juror's credibility.[15] The trial court observed the juror's demeanor on the stand. And the juror testified that he did not hear the name "Gloria Winters." He testified that he did not connect other references made during voir dire to the person whom he knew by that name. Moreover, Jones adduced no evidence at the

---

[13] See *Harrell v. State*, 253 Ga. App. 691, 694 (3) (560 SE2d 295) (2002).

[14] *Harris v. State*, 279 Ga. 304, 308 (3) (d) (612 SE2d 789) (2005).

[15] See generally *Hand v. State*, 205 Ga. App. 467-468 (1) (422 SE2d 316) (1992).

new trial hearing to show how much time had passed since the juror had interacted with "Gloria Winters" and her ministry. At Jones's 2008 trial, however, Gloria Christ testified that she had started her ministry in 1985 and had changed her last name in either 1989 or 1991. In light of this record, Jones has demonstrated no basis for overruling the trial court's finding essentially that the juror had not been dishonest, but merely mistaken.[16]

(b) Even if it could be concluded that the juror lied, a correct response to the question asked — that is, whether he knew a "Gloria Christ" formerly known as "Gloria Winters" of the Heart of Christ Ministry — would not have provided a valid basis for a challenge for cause. Merely knowing a witness is not a sufficient ground to strike for cause a prospective juror.[17]

Jones presses further that the juror testified at the new trial hearing that he considered the person he knew as Gloria Winters to be a credible person. But this evidence also fails to satisfy Jones's burden of demonstrating that "a correct *response* [to the question asked] would have provided a valid basis for a challenge for cause."[18] By directing our attention to the juror's opinion of Gloria Winters's credibility, Jones is essentially asking this court to speculate that a correct answer to the question would have resulted in follow-up examination; that such examination would have revealed that the juror held such an opinion of Gloria Christ; and that, notwithstanding any subsequent questioning about the juror's ability to set it aside, his opinion would have provided a valid basis for a challenge

---

[16] See *Sears*, supra at 840 (2) (finding that evidence did not show that juror lied when he answered question posed on juror questionnaire, but that he had answered the question truthfully, as he then understood it; and further citing principle that jurors must answer truthfully but "we must be tolerant, as jurors may forget incidents long buried in their minds, misunderstand a question or bend the truth a bit to avoid embarrassment") (citation and punctuation omitted); *Isaacs v. State*, 259 Ga. 717, 740-741 (44) (e) (386 SE2d 316) (1989) (finding that juror was not dishonest for failing to reveal during voir dire examination that she had been molested, where juror testified that she had no real memories of it, had blocked out most of her childhood, and was still not sure what happened); *Todd v. State*, 275 Ga. App. 459, 461-462 (2) (620 SE2d 666) (2005) (juror was mistaken, not dishonest, when she indicated during voir dire that she did not know the victim, then testified at new trial hearing that she and the victim had worked together "six or seven years ago" for "maybe a month or two"); *Brumelow v. State*, 239 Ga. App. 119, 121 (2) (520 SE2d 776) (1999) (juror was mistaken, not dishonest, when he indicated during voir dire that he did not know the victim, then testified at the new trial hearing that he and the victim had gone to grade school together, but he had not seen the victim for many years and they were no longer friends).

[17] *Cammon v. State*, 269 Ga. 470, 473 (4) (b) (500 SE2d 329) (1998) (merely knowing the victim or victim's relative is not a sufficient ground to strike for cause a prospective juror); *Brumelow*, supra (juror's mere acquaintance with the victim from grade school would not have been a valid basis for defendant to challenge the juror for cause); *Smith v. State*, 234 Ga. App. 586, 590 (2) (506 SE2d 406) (1998) (juror's mere acquaintance with a police officer witness would not have been a valid basis for defendant to challenge the juror for cause).

[18] *Glover*, supra (footnote omitted; emphasis supplied); see *Sears*, supra.

for cause.[19] We do not find that such speculation is contemplated by the second prong of the test set forth above, which the Supreme Court of Georgia expressly adopted and reaffirmed,[20] despite criticism of that prong.[21] Notably, contrary to the evidentiary leap Jones is proposing with respect to the juror at issue, the record shows that Jones's counsel posed to the prospective juror who *did* reveal his familiarity with Gloria Christ and the Heart of Christ Ministry no follow-up questions to probe that individual's opinion of her credibility.

In any event, the new trial hearing transcript makes it clear that the juror's opinion that Gloria Winters was a credible person stemmed from his religious beliefs. The juror revealed, "[B]eing a minister, I take the words of a minister. I believe God holds us accountable." The record shows that defense counsel knew that a minister would be called by the state to testify. Nothing precluded defense counsel from probing the extent to which the prospective jurors would reject an account given by one not a minister in order to accept a different account, merely because the latter was given by a minister[22] — an inquiry independent of whether the minister was known as "Gloria Christ," "Gloria Winters," or by some other name.

Because Jones did not establish that the juror failed to answer honestly a material question on voir dire and that a correct response would have been a valid basis for a challenge for cause, the trial court did not err in denying his motion for a new trial based upon juror misconduct.

*Judgment affirmed. Smith, P. J., and Bernes, J., concur.*

DECIDED OCTOBER 2, 2009.

---

[19] See *Heard v. State*, 274 Ga. 196, 199 (4) (552 SE2d 818) (2001) (before potential juror can be disqualified for cause, it must be shown that an opinion held by the individual is so fixed and definite that he or she will not be able to set aside the opinion and decide the case based upon the evidence or the court's charge upon the evidence).

[20] See *Isaacs*, supra at 741 (adopting rule from *McDonough Power Equip. v. Greenwood*, 464 U. S. 548, 556 (104 SC 845, 78 LE2d 663) (1984)); see further *Glover*, supra; *Sears*, supra.

[21] See, e.g., *McDonough Power Equipment*, supra at 557-558 (Brennan, J., concurring) (questioning the import of the legal standard set, stating that the proper focus should be on the bias of the juror and the resulting prejudice to the litigant, and proposing that "to be awarded a new trial, a litigant should be required to demonstrate that the juror incorrectly responded to a material question on voir dire, and that, under the facts and circumstances surrounding the particular case, the juror was biased against the moving litigant") (citation omitted); *Glover*, supra at 216 (Benham, J., concurring) (expressing doubt about the validity of the second half of the standard because it "sets the stage for defendants being deprived of the valuable right to make peremptory challenges because it leaves a defendant without a remedy when false answers on voir dire conceal information on which a peremptory challenge would have been based").

[22] See generally OCGA § 15-12-133.

*Richard M. Darden*, for appellant.

*Tom Durden, District Attorney, Henry P. Smith, Assistant District Attorney*, for appellee.