In the Supreme Court of Georgia

Decided:    March 7, 2016

S15A1681. DOWNEY v. THE STATE.

BLACKWELL, Justice.

Jerry Downey was tried by a Tattnall County jury and convicted of murder and several other crimes, all in connection with a shooting in which Eboni Galloway was fatally wounded. Downey appeals, contending that the evidence is insufficient to sustain his convictions, that the indictment was defective, that he was denied a fair and impartial jury, and that he was denied the effective assistance of counsel. We see no error and affirm.[1]

_____

[1] The shooting occurred on April 10, 2008. Downey and a co-defendant, Melvin Browder, were indicted on April 22, 2009, and they both were charged with malice murder, felony murder, three counts of aggravated assault, and the unlawful possession of a firearm during the commission of a felony. Downey and Browder were tried together, beginning on October 26, 2009, and the jury returned its verdict on the next day, finding both men guilty on all counts. Downey was sentenced to imprisonment for life for malice murder, concurrent terms of imprisonment for twenty years each for two aggravated assaults, and a consecutive term of imprisonment for five years for unlawful possession of a firearm during the commission of a felony. The verdict was vacated by operation of law as to felony murder, and the remaining aggravated assault — which was an assault upon Galloway, the victim of the murder — was merged with the malice murder. See Malcolm v. State, 263 Ga. 369, 371-374 (4), (5) (434 SE2d 479) (1993). Browder was convicted of the same crimes and received similar sentences. On November 5, 2009, Downey filed a motion for new trial, which he later amended twice. The trial court denied his motion on April 10, 2015, and Downey timely filed

1. Viewed in the light most favorable to the verdict, the evidence shows that two of Downey's cousins were involved in an altercation in Glennville on April 10, 2008. When Downey heard about the altercation, he gathered a group of men in Reidsville, and they all then proceeded to Glennville. Downey drove his own car and was accompanied by Melvin Browder. Three other men followed in another car. Along the way, Downey purchased gasoline for both cars. When the men arrived in Glennville, Downey at least twice drove through the neighborhood in which the altercation had occurred. A crowd — some of whom were carrying bats and sticks — gathered in the neighborhood, and Downey asked Browder if he had a gun ready. Downey stopped his car, and Galloway, Megan Johnson, and Alan Michael McNeal approached on foot. As they did, Browder fired two shots from the passenger seat of the car toward the approaching group, one of which fatally wounded Galloway. Downey and Browder then sped away.

a notice of appeal on April 23, 2015, although it was erroneously directed to the Court of Appeals. The case was transferred to this Court on June 2, 2015, where it was docketed for the September 2015 term and argued on October 20, 2015. Browder also appealed, and we affirmed his convictions in Browder v. State, 294 Ga. 188 (751 SE2d 354) (2013).

Downey contends that the State failed to prove beyond a reasonable doubt that he was a party to the murder of Galloway. The evidence fails to show, Downey explains, that Browder fired any shots with a specific intent to kill, and it instead establishes only that Browder shot with such a reckless disregard for human life that malice properly was implied.[2] That was enough to sustain Browder's conviction for malice murder. But to prove beyond a reasonable doubt that Downey was a party to that murder, the State had to show that he "[i]ntentionally aid[ed] or abet[ted] [Browder] in the commission of the crime," OCGA § 16-2-20 (b) (3), or that he "[i]ntentionally advise[d], encourage[d], hire[d], counsel[ed], or procure[d] [Browder] to commit the crime." OCGA § 16-2-20 (b) (4). To carry this burden, Downey continues, the State had to show that he and Browder shared a common criminal intent. That, however, is an impossibility, Downey argues, because no one can share a common criminal intent with another who acts only with criminal recklessness. We disagree.

---

[2] "A person commits the offense of murder when he unlawfully and with malice aforethought, *either express or implied*, causes the death of another human being." OCGA § 16-5-1 (a) (emphasis supplied). A specific intent to kill is express malice, whereas an intent to commit acts with such a reckless disregard for human life as to show "an abandoned and malignant heart" amounts to implied malice. OCGA § 16-5-1 (b). When Browder appealed his convictions, we held that the evidence in this case shows only implied malice. See Browder v. State, 294 Ga. 188, 191 (1) (751 SE2d 354) (2013).

It is true, as Downey contends, that "a conviction as a party to a crime requires proof that the defendant shared a common criminal intent with the principal perpetrator of the crime." Jones v. State, 292 Ga. 656, 658 (1) (a) (740 SE2d 590) (2013) (citations omitted). And Downey undoubtedly is correct that a principal acting only with criminal recklessness has no specific intent in which an accomplice might share. But criminal intent does not always require specific intent. A reckless principal may lack a specific intent, but by definition, he has a general intent to act in a way that exposes others to a risk of harm of which he is aware, but that he chooses to disregard. See OCGA § 16-2-1 (b); Browder v. State, 294 Ga. 188, 190 (1) (751 SE2d 354) (2013); Parker v. State, 270 Ga. 256, 259-260 (4) (507 SE2d 744) (1998), overruled on other grounds, Linson v. State, 287 Ga. 881 (700 SE2d 394) (2010).

In this case, Downey concedes that the evidence is sufficient to show that Browder fired shots with recklessness sufficient to imply malice, meaning that Browder intentionally fired shots in conscious disregard of the substantial risk of harm to which the shots exposed others. If Downey, similarly aware of the risk of harm, also intended that Browder fire shots in disregard of that risk — thereby warranting an implication of malice on the part of Downey as well —

4

then Downey and Browder shared a common criminal intent. Together with proof that Downey intentionally aided and abetted Browder in the firing of the shots, see OCGA § 16-2-20 (b) (3), or that he intentionally encouraged Browder to fire the shots, see OCGA § 16-2-20 (b) (4), such evidence of a common criminal intent would be sufficient to authorize a jury to find Downey guilty as a party to the crime of malice murder.[3] See Jackson v. State, 278 Ga. 235, 236 (1) (599 SE2d 129) (2004). See also Ex parte Simmons, 649 S2d 1282, 1285 (I) (Ala. 1994) ("[F]or a person to be guilty of reckless murder as an accomplice, he need not know or decide whether the principal will act intentionally; rather, the accomplice need only have knowledge that the principal is engaging in reckless conduct and intentionally assist or encourage that conduct with the intent to promote or facilitate its commission.") (citations omitted). Viewing the

---

[3] This is consistent with the rule at common law. See Riley v. State, 60 P3d 204, 211 (Alaska App. 2002) ("The rule at common law is that when a person purposely assists or encourages another person to engage in conduct that is dangerous to human life or safety, and unintended injury or death results, it does not matter which person actually caused the injury or death by their personal conduct. Any participant can be convicted . . . so long as the government can prove that the participant acted with the culpable mental state required for the underlying crime — 'recklessness,' 'criminal negligence,' 'extreme indifference to the value of human life,' etc."). It also appears to be consistent with the majority rule among jurisdictions that share our general approach to accomplice liability. See State v. Garnica, 98 P3d 207, 210-211 (II) (A) (Ariz. App. 2004) (collecting cases). See also State v. Friday, 306 P3d 265, 278-279 (Kan. 2013).

evidence in this case in the light most favorable to the verdict, it was sufficient to permit a rational jury to find beyond a reasonable doubt that Downey was guilty of the murder and other crimes of which he was convicted.[4] See Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). See also McNeely v. State, 296 Ga. 422, 425-426 (3) (768 SE2d 751) (2015) (evidence was sufficient to find the defendant guilty as a party to crimes that required proof of reckless driving).

2. Downey contends that the indictment was defective because it failed, he says, to allege an essential element of aggravated assault, namely, that he and Browder assaulted with a "deadly weapon." Even assuming that Downey has adequately preserved this claim of error for appeal,[5] his contention is clearly

---

[4] Downey also contends that the evidence is not sufficient to sustain a conviction for felony murder, but the verdict was vacated by operation of law as to felony murder, and Downey, therefore, was not actually convicted of felony murder. Accordingly, this contention is moot.

[5] Downey raised this claim of error for the first time in a motion for new trial, not a demurrer or motion in arrest of judgment. Although there is some authority to the contrary, see, e.g., Shelnutt v. State, 289 Ga. App. 528, 530 (2) (657 SE2d 611) (2008), the greater weight of authority would suggest that Downey failed to preserve the issue for appeal. See, e.g., State v. Graves, 322 Ga. App. 798, 800 (746 SE2d 269) (2013); Coleman v. State, 318 Ga. App. 478, 479 (1) (735 SE2d 788) (2012); Parks v. State, 246 Ga. App. 888, 889 (1) (543 SE2d 39) (2000). Because this claim of error is so easily rejected on its merits, however, we need not resolve the question of preservation today.

without merit. In the first place, there are different sorts of aggravated assault, see OCGA § 16-5-21 (b) (1)-(4), and only one is described in statutory language that includes the term "deadly weapon." See OCGA § 16-5-21 (b) (2). The indictment in this case appears to have charged Downey with a different sort of aggravated assault, inasmuch as the allegations of the indictment closely track the words of OCGA § 16-5-21 (b) (4), which provides that a person commits aggravated assault when he "assaults . . . [a] person or persons without legal justification by discharging a firearm from within a motor vehicle toward a person or persons." Indeed, the indictment alleged that Downey and Browder "did make an assault upon [Galloway, Johnson, and McNeal] by discharging, without legal justification, a firearm from within a motor vehicle toward the direction of said person[s]." Moreover, even if the indictment had been meant to charge Downey with aggravated assault under OCGA § 16-5-21 (b) (2), a firearm (when used as a firearm) is a deadly weapon per se, and an allegation that a firearm was fired implicitly alleges the use of a deadly weapon. See Silvers v. State, 278 Ga. 45, 47 (2) (1) (597 SE2d 373) (2004) (indictment charging aggravated assault with a firearm, by shooting, clearly denotes the use

of a deadly weapon). The indictment did not fail to adequately allege an essential element of aggravated assault.[6]

3. Downey also contends that he was denied a trial by a fair and impartial jury because one juror in voir dire failed to disclose his relationships with the Department of Corrections and the law enforcement community in general. To prevail on a claim of this sort, Downey had "to show both that the juror failed to answer honestly a material question, and that a correct response would have provided a valid basis for a challenge for cause." Green v. State, 295 Ga. 108, 110 (2) (757 SE2d 856) (2014) (citation omitted). See also Glover v. State, 274 Ga. 213, 214 (2) (552 SE2d 804) (2001); Isaacs v. State, 259 Ga. 717, 741 (44) (e) (386 SE2d 316) (1989). We conclude that Downey failed to carry his burden.

The record in this case shows that, during voir dire, the prospective jurors — having been instructed earlier to answer questions "simply and directly" — were asked to identify their "place of employment." In response to this question, juror Wayne Dasher answered simply and directly that he worked in the

---

[6] To the extent that his counsel failed to preserve this claim of error, see note 5 supra, Downey contends in the alternative that his lawyers were ineffective because they failed in the trial court to object properly to the indictment. But as we have explained, the indictment is not defective, and "the failure to make a meritless objection cannot amount to ineffective assistance." Bradley v. State, 292 Ga. 607, 614 (5) (740 SE2d 100) (2013).

"banking business." Dasher did not add that he also serves on the State Board of Corrections,[7] but notably, he said nothing to suggest that all of his time and energy is devoted exclusively and entirely to the banking business. Like most of the other prospective jurors, Dasher answered the question by identifying his principal occupation and livelihood, and he said nothing at all about his other pursuits in life. See Turan v. State, 274 Ga. 725, 727 (3) (559 SE2d 463) (2002). Dasher was not asked to elaborate on his answer, and the prospective jurors never were asked about their service on public or private boards, their involvement in other community activities, or the extent to which they had any secondary employment that was only part-time or irregular. Dasher also did not volunteer in voir dire that he has relationships with the law enforcement community generally, but again, the prospective jurors were not asked about such things. Downey has failed to show that Dasher answered any question

---

[7] See generally OCGA § 42-2-1 et seq.

9

dishonestly,[8] see Glover, 274 Ga. at 214-215 (2), and for that reason, his claim

that he was denied a trial by a fair and impartial jury fails.[9]

---

[8] We note that, even if Dasher ought to have disclosed his service on the State Board of Corrections, it would have furnished no ground for Downey to challenge Dasher for cause. Without more, affiliation or employment with the Department of Corrections is no reason to strike a prospective juror for cause. See, e.g., Allen v. State, 296 Ga. 785, 786 (2) (770 SE2d 824) (2015); Holloway v. State, 278 Ga. App. 709, 716 (6) (629 SE2d 447) (2006). Galloway's mother worked for the Department, but without more, that fact would not have required the disqualification of prospective jurors having some independent affiliation with the Department. See Wilson v. State, 271 Ga. 811, 816 (5) (d) (525 SE2d 339) (1999), overruled on other grounds, O'Kelley v. State, 284 Ga. 758, 768 (3) (670 SE2d 388) (2008). Likewise, that a prospective juror has some tie to the law enforcement community in general does not, without more, afford a proper basis for disqualifying the prospective juror. See Pace v. State, 271 Ga. 829, 835 (10) (524 SE2d 490) (1999); Barnes v. State, 269 Ga. 345, 351 (8) (496 SE2d 674) (1998); Holloway, 278 Ga. App. at 716 (6). Downey argues that, if only Dasher had disclosed his service on the State Board of Corrections and his ties to the law enforcement community, Downey could have inquired further and uncovered a bias that would have presented grounds for the trial court to strike Dasher for cause. There is no evidence at all of such a bias, however, and the idea that any further inquiry would have uncovered a bias is nothing but speculation. Conjecture is insufficient to carry the burden to show a denial of trial by a fair and impartial jury. See Jones v. State, 300 Ga. App. 287, 293 (4) (b) (684 SE2d 411) (2009), overruled on other grounds, State v. Kelly, 290 Ga. 29, 32 (1) (718 SE2d 232) (2011).

[9] Downey also claims that the trial judge and prosecuting attorney knew Dasher and had an obligation to disclose that he served on the State Board of Corrections and had connections to the law enforcement community. But as we have explained, there is no evidence that Dasher misrepresented anything in voir dire. In the absence of a misrepresentation, we are aware of no obligation on the part of the prosecuting attorney to make such a disclosure. See Stinski v. State, 286 Ga. 839, 846 (23) (691 SE2d 854) (2010). See also Jones v. State, 263 Ga. 904, 906 (7) (440 SE2d 161) (1994). Likewise, we are aware of no obligation on the part of the trial judge to make a disclosure in these circumstances. Cf. Tharpe v. State, 262 Ga. 110, 114 (18) (416 SE2d 78) (1992).

4. Finally, Downey contends that he was denied the effective assistance of counsel at trial. To prevail on a claim of ineffective assistance, Downey must prove both that the performance of his lawyers was deficient and that he was prejudiced by this deficient performance. Strickland v. Washington, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To prove that the performance of his lawyers was deficient, Downey must show that they performed their duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms. Id. at 687-688 (III) (A). See also Kimmelman v. Morrison, 477 U. S. 365, 381 (II) (C) (106 SCt 2574, 91 LE2d 305) (1986). And to prove that he was prejudiced by the performance of his lawyers, Downey must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U. S. at 694 (III) (B). See also Williams v. Taylor, 529 U. S. 362, 391 (III) (120 SCt 1495, 146 LE2d 389) (2000). This burden is a heavy one, see Kimmelman, 477 U. S. at 382 (II) (C), and we conclude that Downey has failed to carry it.

(a) Downey complains that his trial lawyers should have objected under Batson v. Kentucky, 476 U. S. 79 (106 SCt 1712, 90 LE2d 69) (1986), that the State used its peremptory strikes to remove three prospective jurors on the impermissible basis of race. To succeed on this claim, Downey "was required to show not only that trial counsel should have raised a Batson challenge, but also that the challenge would have been successful." Pierce v. State, 286 Ga. 194, 199 (4) (686 SE2d 656) (2009). "The burden of ensuring that the trial court had sufficient information before it to rule on a Batson challenge rested on [Downey] because the challenge is being raised in the context of a claim of ineffectiveness." Grant v. State, 295 Ga. 126, 130 (5) (a) (757 SE2d 831) (2014) (citations omitted). Assuming that Downey presented sufficient evidence to make out a prima facie case of discrimination — permitting the trial court to draw an inference of racial discrimination in the State's use of its peremptory strikes — his claim of ineffective assistance nevertheless fails. "The record shows . . . that [Downey] neither called the State's prosecutor[ ] to testify at the motion for new trial hearing, nor sought out or attempted to introduce [his] notes regarding the striking of jurors prior to trial." Stokes v. State, 289 Ga. 702, 705 (2) (715 SE2d 81) (2011).

12

Absent this evidence, or at least the State's response to [Downey's] attempts to gather this evidence, the trial court had no way of knowing whether the State could produce race-neutral explanations for whatever strikes it made and, if so, of evaluating their credibility so that it could decide, at step three of the <u>Batson</u> analysis, whether there was purposeful racial discrimination in the selection of [Downey's] jury. [Downey's] mere speculation that the State had no such explanations, or that the trial court would have found the State's race-neutral explanations to be pretextual, is insufficient to establish a meritorious <u>Batson</u> claim.

<u>Pierce</u>, 286 Ga. at 201 (4) (citation and footnote omitted).

(b) Downey also asserts that his trial lawyers were ineffective because they failed to object to the omission of jury charges on knowledge and shared intent. Such charges were necessary, Downey says, for the jury to understand that both knowledge and shared intent would be required to convict him as a party to the crimes, especially if the jury were to find guilt based on his encouragement of Browder's conduct. But the trial court not only thoroughly and properly charged the jury on criminal intent and the insufficiency of mere presence or association, it also charged on parties to a crime, specifically instructing the jury that a person may be convicted as a party to a crime if he *intentionally* aided or abetted the *commission of the crime* or *intentionally* advised or encouraged another to *commit the crime*. So the jury instructions

13

made it clear that the encouragement had to be intentional and directed toward the commission of the crime, and they also indicated that more than knowledge and approval was necessary. The court charged the jury both that criminal intent had to be proved beyond a reasonable doubt and that "participation in the criminal intent" might be inferred from certain circumstances. Considered as a whole, the charges were sufficient to cover the knowledge and shared intent required for a defendant to be convicted as a party to the crimes. See White v. State, 312 Ga. App. 421, 427 (2) (718 SE2d 335) (2011); Smallwood v. State, 296 Ga. App. 16, 25 (4) (e) (673 SE2d 537) (2009), overruled on other grounds, Stephens v. State, 289 Ga. 758, 759, n. 2 (1) (a) (716 SE2d 154) (2011); Copeland v. State, 263 Ga. App. 776, 780 (2) (589 SE2d 319) (2003). Consequently, we cannot find Downey's lawyers ineffective for failing to object to the omission of jury instructions on knowledge and shared intent. See Smallwood, 296 Ga. App. at 25 (4) (e). In addition, Downey has never identified the specific additional instruction on shared intent that he believes should have been requested, and, therefore, "he has failed to show that there is a reasonable probability that the outcome of the trial would have been different if his counsel

14

had requested some unarticulated different charge." <u>Brown v. State</u>, 297 Ga. 685, 689 (3) (a) (777 SE2d 466) (2015) (citation omitted).

<u>Judgment affirmed. Thompson, C.J., Hines, P.J., Benham, Melton, and Nahmias, JJ., and Judge Shawn Ellen LaGrua concur. Hunstein, J., not participating.</u>