300 Ga. 707
FINAL COPY

S16A1842.  GREEN v. THE STATE.

GRANT, Justice.

Appellant Willie Moses Green was indicted and tried for malice murder and related crimes in connection with the November 2004 stabbing death of Marita Bradshaw.  At trial, Green asserted an insanity defense, which the jury rejected, finding Green guilty but mentally ill.  Green now appeals, contending that the trial court erred on two occasions in its response to courtroom outbursts by Green and that his trial counsel rendered ineffective assistance.  Finding no reversible error, we affirm.[1]

---

[1] The crimes were committed on November 20, 2004.  On March 3, 2005, a Cobb County grand jury indicted Green for malice murder, felony murder predicated on aggravated assault, and aggravated assault.  Following a more than three-year period of incompetency, during which Green was committed at a State psychiatric facility, Green was determined to be competent and returned to Cobb County for trial.  At the conclusion of a trial held May 11-14, 2009, the jury found Green guilty but mentally ill as to all charges.  The trial court sentenced Green to life imprisonment for malice murder; the felony murder count was vacated by operation of law, and the aggravated assault count merged into the malice murder count.  See *Malcolm v. State*, 263 Ga. 369, 371-374 (4), (5) (434 SE2d 479) (1993).  On May 18, 2009, Green filed a motion for new trial.  Following a hearing, the trial court denied the motion on May 9, 2014.  Green filed a timely notice of appeal on June 4, 2014, which was amended on November 2, 2015.  The case was docketed in this Court to the September 2016 term and thereafter was submitted for decision on the briefs.

1. Viewed in the light most favorable to the jury's verdicts, the evidence shows that on November 20, 2004, Cobb County police responded to a 911 call regarding a domestic dispute in progress outside the home where Green resided with his fiancée, Marita Bradshaw. This 911 call, from one of Green's neighbors, was followed by another 911 call from Green, who identified himself and told the dispatcher that he had just stabbed someone to death. When law enforcement arrived, Green raised his hands in the air, told the officer that he had stabbed the victim, and pointed to where she was lying, unresponsive, in the driveway. Near the victim's body was a bloody screwdriver; there was blood on Green's left hand. An autopsy of the victim later revealed a total of 18 stab wounds, the nature of which was consistent with infliction by a screwdriver.

Soon after his arrest, Green underwent a court-ordered competency evaluation by forensic psychologist Dr. Kevin Richards, who determined that Green was incompetent due to a severe mental disorder. As a result, Green was committed for treatment at Central State Hospital, a maximum-security State mental health facility, where he remained until June 2008, when another Central State psychologist, Dr. Patricia Marterer, determined that Green had regained competency, and Green was returned to Cobb County for trial. Green contested

2

the competency determination, and in April 2009, a competency trial was held, at which a jury found Green competent to stand trial.

During jury selection at his subsequent criminal trial, after having been admonished several times for being disruptive, Green began a rambling colloquy, and exclaimed that he had been "committed at Central State Hospital for the rest of my life" and that he "was too dangerous to live in society." Deputies escorted Green from the courtroom, and the trial judge explained to the prospective jurors that Green was being removed because of his outburst, but would be allowed to return when he had calmed down. Green's counsel moved for a mistrial, which was denied. At the conclusion of voir dire, as the selected jurors were being announced, Green interrupted, telling the jurors that they could send him to prison, that he had been mistreated at the hospital, and that he was worried about other patients being mistreated in similar fashion. Green was again escorted from the courtroom, at which point the court told the jury, "I think it only fair, ladies and gentlemen, that you know we had a competency trial before a jury for Mr. Green about two weeks ago and he was found competent to stand trial. That's why he's here." There was no objection to this comment.

3

The State presented testimony from the lead investigator regarding his post-arrest interview of Green, as well as a recording of the interview itself. In the interview, Green told the investigator that he had stabbed the victim after she had asked him to leave her home. Green also reported that the victim had given him a shirt that gave him a rash all over his body; that she contaminated his food; and that she caused lightning to emanate from his posterior when she spoke or took such actions as flipping a light switch or opening a soda can. The prosecution also presented testimony from a Cobb County sheriff's deputy, to whom Green had remarked in reference to the crime, "I know what I did and I don't have remorse."

Green himself testified at trial that every time the victim spoke, hit a light switch, or expelled gas, lightning would emanate from his posterior; he attributed this power to "witchcraft or roots or something." Green also testified that he had been mentally ill for 25 years and that, though he was currently taking medication, he had not been doing so at the time of the crime. He testified further that the victim had been jealous, accusing him of "messing around on the job," that he had tried to get away from the victim but she would not let him go, and that he had killed the victim after having "lost it." He stated

at one point that he did not remember the day of the killing but later stated that he remembered calling the police and indicated that he was so "out of it" that he "probably didn't stab her but one time" though he believed he had "stabbed her a hundred times." At numerous points during his testimony, Green expressed his belief that the jury could not convict him because the autopsy photographs of the victim did not depict her face. He also testified that he knew it was wrong to take another person's life.

The defense also presented the testimony of Dr. Richards, who had conducted Green's initial competency evaluation in 2005 and whom defense counsel had subsequently retained to contest his competency after Green's release from Central State. Dr. Richards testified that, having conducted a second evaluation of Green in late 2008, he continued to believe that Green was not competent to stand trial due to his acute mental illness. Dr. Richards opined further that, at the time of the murder, Green had been suffering from a delusion that the victim was terrorizing him with the lightning bolts and that his only recourse was to kill her. Despite the knowledge that killing was wrong, Green was compelled by this delusion, Dr. Richards opined, to kill the victim.

In rebuttal, the prosecution offered the testimony of Dr. Marterer, the clinical psychologist who had conducted Green's competency evaluation at Central State in 2008. Dr. Marterer testified to her conclusion that although Green did have delusions regarding the victim, they were long-held and chronic and were not the precipitating factor in the killing. Rather, Dr. Marterer testified, in her opinion, Green had killed the victim because of his anger at being put out of the victim's home.

Green does not dispute that the evidence presented at trial and summarized above is sufficient to sustain his convictions. Nevertheless, we have carried out an independent review of that evidence, and conclude that it was legally sufficient to enable a rational jury to conclude beyond a reasonable doubt that Green was guilty of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). The jury was likewise authorized to reject Green's insanity defense. See *Choisnet v. State*, 295 Ga. 568, 571 (1) (761 SE2d 322) (2014).

2. Green contends that the trial court erred in denying his motion for mistrial after the first of Green's outbursts before the jury. "Measures to be taken as a result of demonstrations and outbursts which occur during the course

6

of a trial are matters within the trial court's discretion unless a new trial is necessary to [e]nsure a fair trial." *Messer v. State*, 247 Ga. 316, 324 (6) (276 SE2d 15) (1981). See also *Grant v. State*, 298 Ga. 835,838 (2) (785 SE2d 285) (2016) (denial of a mistrial constitutes reversible error only if mistrial was required to preserve defendant's right to a fair trial); *Brannan v. State*, 275 Ga. 70, 80-81 (12) (561 SE2d 414) (2002) (no abuse of discretion in declining to grant mistrial due to witness's display of emotion).

Here, the trial judge was walking the fine line of accommodating Green's right to be present at all critical stages of his trial, see, e.g., *Sammons v. State*, 279 Ga. 386, 387 (2) (612 SE2d 785) (2005), while also attempting to maintain orderly and fair proceedings in his courtroom. See OCGA § 15-1-3 (1) (prescribing court's power to "preserve and enforce order in its immediate presence"); *Glenn v. State*, 205 Ga. 32 (52 SE2d 319) (1949) (recognizing court's duty to mitigate prejudicial conduct during trial). Faced with Green's disruptive conduct, the trial judge admonished Green several times to stop, warned him he would be removed if he did not, and was finally compelled to remove Green when he began pronouncing that he was a danger to society. The judge then offered the jury a brief explanation for what had occurred. The

court's response to Green's outburst was reasonable and within its discretion. See, e.g., *Todd v. State*, 261 Ga. 766, 768 (3) (410 SE2d 725) (1991) (no abuse of discretion in responding to courtroom outburst by instructing jury to disregard the incident rather than declaring mistrial); *Forney v. State*, 255 Ga. 316, 318 (3) (338 SE2d 252) (1986) (no abuse of discretion in responding to victim's wife's emotional display by having her escorted from courtroom and instructing jurors to resist emotion in their deliberations).

3. Green next contends that the trial court erred when, in response to Green's subsequent outburst, it informed the jury that Green's competency to stand trial had been recently adjudicated, without simultaneously instructing the jury regarding the legal distinction between competency and sanity. We find no reversible error. As an initial matter, because Green's trial counsel failed to interpose an objection to the court's statement on this or any other ground, this issue has not been preserved for appellate review. See, e.g., *King v. State*, 286 Ga. 721, 722 (690 SE2d 852) (2010) ("[i]t is well settled that '(e)rrors not raised in the trial court will not be heard on appeal'").[2]

---

[2] Contrary to Green's contention, we do not view the court's statement as an improper expression of the judge's opinion "as to what has or has not been proved or as to the guilt of the accused," OCGA § 17-8-57 (2009), which, at the time of Green's 2009 trial, would have constituted reversible error even absent an objection. See *State v. Gardner*, 286 Ga. 633, 634 (690 SE2d 164)

8

But even if the issue had been preserved, we would find no reversible error. Any comment from the trial court as to the distinction between sanity and competency would have been confusing and out of context at that early stage of the proceedings, where the parties had yet to even give their opening statements. Even assuming the judge had erred in making this comment without, at the same time, distinguishing competency from sanity, there was no harm to Green insofar as the jurors were educated on the distinction between these two concepts as the trial unfolded. Specifically, Dr. Richards explained without contradiction that competency refers to one's mental state at the time of trial, and "doesn't have anything to do with what [a person's] mental state was when they did what they're accused of doing." Accordingly, any initial misimpressions the jury may have had as a result of the trial court's comment would have been resolved during the course of the trial and would thus have been no cause for reversal.

4. In his final enumeration, Green contends that his trial counsel rendered ineffective assistance. We again disagree. To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was

(2010). The court's statement merely confirmed for the jury a point which, having already been determined by a previous jury, was not at issue in the trial at hand. See id. at 634-635.

9

professionally deficient and that such deficient performance resulted in prejudice to the defendant. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (A) (104 SCt 2052, 80 LE2d 674) (1984); *Wesley v. State*, 286 Ga. 355, 356 (3) (689 SE2d 280) (2010). To prove deficient performance, one must show that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Romer v. State*, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013); see also *Strickland*, 466 U. S. at 687-688 (III) (A). To prove prejudice, one must establish a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been different. *Strickland*, 466 U. S. at 695 (III) (B). If the defendant fails to establish either the "deficient performance" or the "prejudice" prong of the *Strickland* test, this Court is not required to examine the other. *Green v. State*, 291 Ga. 579, 580 (2) (731 SE2d 359) (2012).

Here, Green alludes vaguely to "numerous matters" he raised at the motion for new trial hearing in relation to his counsel's performance at trial. This Court is not required, however, to cull the record in search of support for an appellant's claims, see *Wallace v. State*, 296 Ga. 388, 392 (4) (b) (768 SE2d 480) (2015), and we decline to do so here. The only specific instance of

10

deficient performance Green has identified is counsel's failure to object to the trial judge's statement regarding the prior adjudication of Green's competency. But, given our holding in Division 3, supra, that the trial court did not commit reversible error in making such a statement, counsel's failure to object cannot give rise to a claim of ineffectiveness. See, e.g., *Howard v. State*, 288 Ga. 741, 747 (6) (707 SE2d 80) (2011) (where no reversible error in jury instruction at issue, appellant could not establish ineffectiveness from trial counsel's failure to interpose an objection to that instruction).

Judgment affirmed. All the Justices concur.

Decided March 6, 2017.

Murder. Cobb Superior Court. Before Judge Leonard.

Edwin J. Wilson, for appellant.

D. Victor Reynolds, District Attorney, Michael S. Carlson, Assistant District Attorney; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General, for appellee.