303 Ga. 203
FINAL COPY

S17A1417.  TANNER v. THE STATE.

NAHMIAS, Justice.

Appellant Marquis Dequan Tanner was convicted of malice murder and other crimes in connection with the shooting death of Abel Carmona, Jr.[1]  On appeal, he contends that the evidence presented at his trial was insufficient to support his murder conviction; that he was denied his Sixth Amendment right to conflict-free counsel; and that the trial court erred by admitting into evidence a comment made by a detective during Appellant's interrogation.  We conclude that the evidence was sufficient, Appellant has not demonstrated a Sixth Amendment violation, and the comment was harmless.  Accordingly, we affirm.

---

[1] The victim was killed on June 18, 2014.  On August 29, 2014, a Whitfield  County grand jury indicted Appellant, Endy Becerra, and Tywon Henderson for malice murder, three counts of felony murder, two counts of aggravated assault, attempted armed robbery, possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon.  Appellant's trial was severed, and Becerra and Henderson testified for the State.  The trial began on June 22, 2015, and on June 25 the jury found Appellant guilty of all charges.  The trial court sentenced him to serve life in prison for malice murder, a 30-year concurrent term for attempted armed robbery, a five-year consecutive term for possession of a firearm during the commission of a crime, and a five-year concurrent term for possession of a firearm by a convicted felon.  The felony murder verdicts were vacated by operation of law, and the aggravated assault counts were merged with the malice murder conviction.  Through new counsel, Appellant filed a timely motion for new trial, which he orally supplemented at the December 6, 2016 hearing on the motion.  The trial court entered an order denying the motion the next day.  Appellant filed a timely notice of appeal, and the case was docketed in this Court for the August 2017 term and submitted for decision on the briefs.

1. (a) Viewed in the light most favorable to the verdicts, the evidence at trial showed the following. On the night of June 18, 2014, Appellant, Endy Becerra, and Tywon Henderson drove to meet Carmona and two of his friends in the parking lot of an apartment complex in Dalton, Georgia. Appellant, who was a convicted felon, was carrying a revolver. Carmona was carrying $950 that he planned to use to buy a quarter-pound of marijuana from Appellant. Carmona got into the rear passenger seat of Becerra's car, and Becerra drove away. After traveling a short distance, Becerra stopped the car. According to Becerra, Carmona repeatedly protested that he did not want to leave in the car because he did not know the other men. Appellant responded, "Fu*k this," pointed his gun at Carmona's neck, and told him to "give him his fu*king money." Appellant then pulled Carmona out of the car, and they went behind the car, where Becerra and Henderson could not see them because the rear window was tinted. Becerra and Henderson testified that they heard a gunshot while Appellant and Carmona were outside the car, and Becerra's rear window shattered. When Appellant got back in the car, Henderson asked why he had shot. Appellant replied that his gun "just let off."

Becerra then drove Appellant and Henderson to a party nearby.

2

Carmona's two friends heard the gunshot, drove toward it, and found Carmona lying unconscious on the ground with a gunshot wound to his chest. He was taken to a hospital, where he was pronounced dead. Carmona's friends took the $950 he was carrying after finding it on the ground near his body. They initially told police officers investigating the shooting that they had arrived at the apartment complex to pick up Carmona to go out to eat, but they eventually admitted that they intended to buy marijuana. They told the police that there was a machete in their car, but Carmona did not take it with him when he got into Becerra's car. The police did not find any weapons on Carmona's body or any marijuana at the crime scene.

Carmona's friends gave the police Becerra's name, and during his interview with the police, Becerra identified Appellant as the shooter and Henderson as an accomplice to the planned drug deal. The police searched Becerra's car and found the bullet that had passed through Carmona in the trunk area. Becerra told the police that he never saw the marijuana Appellant was purportedly going to sell to Carmona, and he assumed that Appellant had planned to rob Carmona from the beginning.

The night after the shooting, Appellant was arrested. As he was

3

handcuffed, he said that he knew what the arrest was about and he "didn't have nothing to do with it." During an interview with the police the next day, Appellant continued to assert that he was not involved in Carmona's death. Henderson was arrested that day.

The police later searched the woods behind the house in which Appellant and Henderson had attended the party after the shooting. They located in a plastic bag the clothes Appellant had been wearing that day. The host of the party had found the bloody clothes and thrown them in the woods on the day after the shooting. Officers also found the revolver in the same woods. DNA testing showed that Carmona's blood was on Appellant's clothes, and ballistics testing showed that the bullet recovered from Becerra's car was fired from the revolver. A recording made by a security camera at the community center across from the party house showed Becerra's car arriving at the party just after the time of the shooting and two unidentifiable individuals exiting and walking toward the woods where the revolver was found before returning to go into the house.

At trial, Henderson testified that he and Appellant had no plans to rob Carmona. Henderson claimed that Carmona became aggressive and tried to get

out of the car without paying for the marijuana, and Appellant followed Carmona to get the money Carmona owed him. Appellant testified that he got the revolver from a friend and had it with him for protection at the time of the shooting, as he had been asked to sell marijuana to someone neither he nor Henderson, who had set up the drug deal, knew. According to Appellant, Carmona became aggressive after Appellant showed him the marijuana. Carmona and Appellant left the car, and when Carmona hit Appellant twice in the face, Appellant punched Carmona in the face. Appellant claimed that Carmona then pulled "a blade" from his waistband, and Appellant responded by pulling out the revolver, which "just let off." Appellant admitted that he shot Carmona, but asserted that he pulled his gun in self-defense.

(b) Appellant contends that the evidence summarized above was legally insufficient to support his malice murder conviction. We disagree. Although Appellant asserted at trial that he did not intend to kill Carmona, "'[i]t was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" Vega v. State, 285 Ga. 32, 33 (673 SE2d 223) (2009) (citation omitted). The State presented evidence that Appellant took a revolver, but no marijuana, with him to the drug deal;

threatened Carmona, who was unarmed, with the gun; told Carmona to give him Carmona's money; pulled Carmona from the car and shot him; left the scene immediately, leaving Carmona lying unconscious on the ground; disposed of his revolver in the woods before going to a party; and then claimed to the police that he had nothing to do with Carmona's death. This evidence was sufficient to authorize a rational jury to reject Appellant's claim that he was defending himself when his gun accidentally discharged and to find him guilty beyond a reasonable doubt of malice murder. See Jackson v. Virginia, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979); Anthony v. State, 298 Ga. 827, 829 (785 SE2d 277) (2016) ("The jury is free to reject any evidence in support of a justification defense and to accept the evidence that the shooting was not done in self-defense."). The evidence was similarly sufficient to support Appellant's convictions for attempted armed robbery, possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon.

2.   Appellant contends that he was denied his Sixth Amendment right to conflict-free counsel at trial. See Edwards v. Lewis, 283 Ga. 345, 348 (658 SE2d 116) (2008) ("One component of the right to effective assistance of counsel is the right to representation that is free of actual conflicts of interest.").

He cannot demonstrate that such a constitutional violation occurred.

Appellant's lead counsel before and during trial was Steve Blevins of the Conasauga Circuit Public Defender's Office. As the trial date approached, Kelly Wegel of the same office joined the defense to replace an attorney on maternity leave. About ten days before trial, Blevins became aware that Wegel was also representing a man named Dennis Love on charges not related to this case. The State had contacted Love about testifying regarding a prior robbery by Appellant and had listed Love as a witness in Appellant's case, and Wegel had discussed with Love the possibility of testifying against Appellant. When Blevins learned of this conflict of interest, the Public Defender's Office found a lawyer not associated with the office to represent Love and also appointed an unaffiliated lawyer to represent Appellant. A week before trial, however, Blevins, Wegel, and the prosecutor met with the trial court in chambers, and the State announced that it would not call Love as a witness. The trial court considered the conflict resolved and instructed Blevins and Wegel to continue their representation of Appellant. The other attorney's brief appointment as Appellant's counsel was rescinded.

At the beginning of his trial, Appellant addressed the court, saying that he

was confused about who was representing him and that he was "not comfortable" with Wegel because Love had told him in jail that she had encouraged Love to testify against Appellant. The court advised Appellant that the conflict had been resolved because the State was not going to call Love as a witness against him. Wegel told the court that she and Love had discussed the subpoena he received from the State, and she had advised him of his rights, but she did not recall encouraging or discouraging Love to testify. Appellant and Blevins were given some time to discuss whether Wegel should continue as co-counsel, and Blevins then advised the court that she would be discharged from the case. However, later that day, Blevins informed the trial court that Wegel would be rejoining the defense team, explaining that Appellant was "fine" with her assisting Blevins in his defense. After the court confirmed directly with Appellant that he wanted Wegel to assist, she resumed the representation.

"An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance," not just "a mere theoretical division of loyalties." Mickens v. Taylor, 535 U. S. 162, 171, 172 n.5 (122 SCt 1237, 152 LE2d 291) (2002). See also State v. Abernathy, 289 Ga. 603, 607 (715 SE2d 48) (2011) ("[I]n order to establish ineffective assistance

8

arising from a conflict of interest, a defendant must show the existence of an actual conflict that adversely affected counsel's performance."). Wegel's representation of both Appellant and Love posed a significant conflict issue when Love became a potential witness against Appellant, and Blevins and Wegel dealt with that issue appropriately by ensuring that both clients were appointed new, unaffiliated counsel. Just a few days later, however, and a week before trial, the concern about simultaneous conflicting representations dissipated, when the State announced that it would not call Love as a witness at Appellant's trial. Compare Mitchell v. State, 261 Ga. 347, 349 (405 SE2d 38) (1991) (holding that an actual conflict existed where defense counsel's representation of a witness in an unrelated matter precluded him from cross-examining the witness at the appellant's trial).

Moreover, when Appellant expressed concern at the outset of his trial about Wegel's (but not Blevins's) representation of him, the court, despite explaining that the conflict with Love that Appellant referenced had been resolved, gave Appellant the opportunity to discharge Wegel. Compare Bates v. State, 306 Ga. App. 418, 418-419 (702 SE2d 460) (2010) (holding that the trial court did not err in concluding that any conflict of interest arising from the

9

same public defender's office representing the defendant and the woman arrested with him had been resolved before trial and therefore requiring the defendant to choose between representation by his appointed lawyer or proceeding pro se). And when Wegel rejoined the defense team later that day, both Blevins and Appellant advised the court that he wanted her back.

Appellant has failed even to allege that the conflict he claims existed had an adverse effect on his lawyers' performance at trial, and indeed the record belies any such claim. Blevins zealously defended Appellant, and while Wegel played a smaller role, she thoroughly cross-examined Henderson and argued vigorously against playing for the jury the statement from the recording of Appellant's police interview that is the subject of Division 3 below. At the motion for new trial hearing, Blevins testified that Wegel did not attempt to influence the case against Appellant's interests. Blevins also confirmed that both he and Wegel represented Appellant's best interests and that she was helpful in preparing for trial. Because Appellant has not shown any actual conflict that adversely affected the performance of his counsel, he cannot prevail on his Sixth Amendment claim.

3. Finally, Appellant contends that the trial court erred by admitting into

evidence, over his objection, a portion of the video recording of his interview by the police, during which a detective said to Appellant, "I'm confident you're going to prison." Appellant argues that this evidence "invade[d] the province of the jury and convey[ed] to the jury that [he] had been tried and convicted." Even assuming that the detective's comment should have been redacted, however, its admission was harmless. See OCGA § 24-1-103 (a) ("Error shall not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . ."); Smith v. State, 299 Ga. 424, 431 (788 SE2d 433) (2016) ("The new Evidence Code continues Georgia's existing harmless error doctrine for erroneous evidentiary rulings."). "'The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict.'" Smith, 299 Ga. at 432 (citation omitted).

Considering the strength of the properly admitted evidence of Appellant's guilt and the context of a police interview in which, despite the evidence (and his own later admission that he shot Carmona), Appellant was claiming that he had nothing to do with Carmona's death, the jury was highly unlikely to have been swayed by the detective's passing comment that he thought Appellant

11

would go to prison.  After all, Appellant had been arrested for murder, and

> [a]lthough it may have been improper for [the detective] to share his subjective belief [that Appellant would go to prison] with the jury explicitly, any rational juror would have guessed that [the detective] believed as much without being told.  As we have explained before, "[s]uch comments upon the patently obvious generally pose little, if any, danger of prejudice."

Pyatt v. State, 298 Ga. 742, 755 (784 SE2d 759) (2016) (quoting Butler v. State, 292 Ga. 400, 407 (738 SE2d 74) (2013)).  Moreover, the jury could not have believed that Appellant had already "been tried and convicted" based on a statement made during a police interview played for them during Appellant's trial.  Any error was harmless.

Judgment affirmed.  All the Justices concur.

Decided March 5, 2018.

Murder. Whitfield Superior Court. Before Judge Partain.

Teddy L. Henley, for appellant.

Herbert M. Poston, Jr., District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Scott O. Teague, Assistant Attorney General, for appellee.