304 Ga. 146
FINAL COPY

S18A0497.  THOMPSON v. THE STATE.

NAHMIAS, Justice.

Appellant Damarius Thompson challenges his convictions for malice murder and other crimes in connection with the shooting death of Joshua Richey.  Appellant, who is representing himself on appeal, enumerates a variety of claims.  Our review of the record, however, reveals no reversible error, so we affirm.[1]

---

[1] The victim was killed on March 10, 2015.  On June 16, 2015, a Fulton County grand jury indicted Appellant and Shontavious Chestnut for felony murder predicated on entering an automobile, entering an automobile, and attempted entering an automobile.  Appellant alone was also charged with malice murder, three counts of felony murder (based on armed robbery, aggravated assault, and possession of a firearm by a convicted felon), armed robbery, aggravated assault, two counts of possession of a firearm by a convicted felon, tampering with evidence, and possession of a firearm during the commission of a felony.

Appellant and Chestnut were tried together from May 2 to 9, 2016. Appellant was represented by counsel before trial and during jury selection, but then he asked to represent himself. After conducting a hearing pursuant to Faretta v. California, 422 U. S. 806 (95 SCt 2525, 45 LE2d 562) (1975), the court allowed Appellant to do that.  The court granted a directed verdict of not guilty on Chestnut's felony murder count, and he was then found guilty of both entering an automobile counts and sentenced to 90 months in prison as a recidivist.  The jury found Appellant guilty of all charges; one count of possession of a firearm by a convicted felon had been bifurcated, and after the main trial a brief additional proceeding was held and the jury found Appellant guilty of that charge as well.  The trial court sentenced Appellant to serve concurrent life sentences for malice murder and armed robbery and consecutive sentences of 30 months for attempted entering an automobile, ten years for tampering with evidence, 15 years for one of the possession of a firearm by a convicted felon counts, and five years each for possession of a firearm during the commission

1. Viewed in the light most favorable to the verdicts, the evidence presented at trial showed the following. On March 10, 2015, Richey and his friend Jason Shelton were working a construction job near a Kroger grocery store on Ponce de Leon Avenue in Atlanta. Richey had parked his pickup truck in the Kroger parking lot, and Shelton did the same with his truck. Around 2:00 p.m., Richey and Shelton were sitting at their work site about 75 feet away from their trucks when Shelton saw a man tinkering with the passenger door handle of his truck and another man wearing yellow sitting in Richey's truck. He and Richey ran toward the parking lot, and Richey slapped the driver's side window of his truck with his hand. The man in Richey's truck shot a bullet through the closed door, hitting Richey in the chest; got out of the truck and into a two-door black BMW sedan with tinted windows and a red and white temporary license plate that was parked between the trucks; and fled with the other man driving. Richey died from his gunshot wound moments later. The bullet that killed him

of a felony, entering an automobile, and the other count of possession of a firearm by a convicted felon. The felony murder verdicts were vacated by operation of law, and the aggravated assault verdict merged.

Appellant filed a timely motion for new trial, which he amended on February 6, 2017. After an evidentiary hearing, the trial court denied the motion on May 22, 2017. Still representing himself, Appellant filed a timely notice of appeal, which he amended on October 16, 2017. The case was docketed in this Court for the term beginning in December 2017.

2

was fired by a gun consistent with the .357 Glock pistol that he kept in the middle console of his truck; a box of .357 bullets was found in the truck. A .357 shell casing was also found at the scene, but Richey's gun was not found.

The police obtained a video recording of the shooting from one of Kroger's surveillance cameras, and the recording was broadcast on the local news. The next day, Shenia Gaither saw the surveillance video on the news and told the police that she recognized the BMW, which her roommate Theresa Gurley had purchased the day before the murder. When the police went to Gurley's home, they found a BMW parked in her driveway that matched the getaway car seen in the surveillance video. A detective interviewed Gurley, who said that on the day of the shooting, she lent the BMW to her friend "Mean." Gurley later identified "Mean" as Appellant in a photo lineup. In the backseat of the BMW, the police found a Powerade bottle that testing later showed had Appellant's fingerprints and DNA on it. The police also found Appellant's fingerprint on the driver's side door of Richey's truck.

During a later interview with the police, Gaither said that on the day after the shooting, she saw Gurley and "Mean" — whom she also identified as Appellant in a photo lineup — burning yellow clothing in Gurley's garage and

3

wiping down the BMW. The police had noticed burn marks and soot in the garage and had smelled a "fresh burn" and bleach. Gaither also said when she told Appellant that she had seen him in the surveillance video, he told her that he shot Richey because "[Richey] got too close."

The police arrested Appellant on March 26, 2015. Cell phone records showed that his phone was near the Kroger at the time of the shooting and near Gurley's house on the day after the murder. The State also presented evidence that Appellant previously had been convicted for illegally entering an automobile in a retail parking lot. Appellant did not testify at trial, where he represented himself after the jury was selected. The surveillance video, which was played for the jury, does not clearly show the assailant, and Appellant's primary defense was that he was not the shooter depicted on the recording.

2. Appellant contends that the evidence presented at trial was legally insufficient to support his convictions for malice murder, armed robbery, felony murder based on entering an automobile, and tampering with evidence, and that the trial court erred in denying his motion for a directed verdict of acquittal as

to those charges and felony murder based on armed robbery.[2] Appellant argues that there was no evidence that he killed Richey with malicious intent or that he took anything from Richey; he also complains that the tampering conviction was based solely on Gaither's testimony. But the State's evidence showed that Appellant broke into Richey's truck, leaving his fingerprint on the door; took Richey's pistol from the console and shot Richey with it when Richey ran up to the truck to confront him; fled in the BMW seen on the surveillance video, which he had borrowed from Gurley, taking the pistol with him; burned the clothes he was wearing that day and wiped down the getaway car; and admitted to Gaither that he killed Richey because he "got too close."

"'[E]vidence that the defendant acted where no considerable provocation appears and where all the circumstances of the killing show an abandoned and malignant heart'" is sufficient to establish the malice required for a malice murder conviction. Moran v. State, 302 Ga. 162, 164 (805 SE2d 856) (2017) (citation omitted). Moreover, "(t)he testimony of a single witness is generally sufficient to establish a fact," and "[i]t was for the jury to determine the

---

[2] In fact, Appellant was not convicted of either felony murder count, as the guilty verdicts on those counts were vacated by operation of law. See Downey v. State, 298 Ga. 568, 568 n.1 (783 SE2d 622) (2016). His contention as to those counts is therefore moot. See id. at 570 n.4.

credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence." Moss v. State, 298 Ga. 613, 614 (783 SE2d 652) (2016) (citations and punctuation omitted). Thus, when viewed in the light most favorable to the verdicts, the evidence presented at trial and summarized above was sufficient to authorize a rational trier of fact to find Appellant guilty beyond a reasonable doubt of all of the crimes of which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). The Jackson standard also applies to a challenge arising from the denial of a motion for a directed verdict of acquittal, see Humphrey v. State, 252 Ga. 525, 527 (314 SE2d 436) (1984), and we therefore also conclude that the trial court did not err in denying that motion.

3.     Appellant claims that his convictions are void because the record does not show that his indictment was returned in open court. In Georgia, a grand jury indictment must be returned in open court, and the failure to do so is per se injurious to the defendant. See State v. Brown, 293 Ga. 493, 494 (748 SE2d 376) (2013). The evidence presented at the motion for new trial hearing, however, belies Appellant's claim (even assuming that he did not forfeit it by failing to raise it in a timely plea in abatement, see OCGA § 17-7-110).

6

At the hearing, a supervisor in the Fulton County Superior Court Clerk's Office testified that under the court's procedure, true bills of indictment are presented to the presiding judge in open court and no true bill is given a case number unless that procedure has been followed. Appellant's indictment shows the handwritten word "true" in front of the word "bill," the handwritten date, the grand jury foreperson's signature, and the stamped date the indictment was filed in the superior court; his case then received a case number from the clerk's office. The trial court found from this evidence, which Appellant did not dispute, that his indictment was in fact returned in open court. His claim therefore fails. See Chelsey v. State, 121 Ga. 340, 344 (49 SE 258) (1904) (holding that testimony rebutting the defendant's claim that the indictment was not returned in open court was sufficient even though the court's minutes failed to show the return of the indictment); White v. State, 312 Ga. App. 421, 428 (718 SE2d 335) (2011) ("There is no express requirement that the indictment contain a written statement that it was received in 'open court,' or that it be signed.").

4. Appellant also contends that he was not properly arraigned. He asserted this claim in two motions in arrest of judgment, which were both filed

in the trial court on July 12, 2016. The court correctly dismissed those motions as untimely. Under OCGA § 17-9-61 (b), a motion in arrest of judgment "must be made during the term at which the judgment was obtained." Appellant's convictions were entered on May 10, 2016, during the trial court's May 2016 term, which ended on July 3. See OCGA § 15-6-3 (3) (Fulton County terms of court). One of Appellant's motions was postmarked on July 1, but that does not help him, because both motions were filed with the clerk of court after the May term had ended and were therefore untimely. See Roberts v. Cooper, 286 Ga. 657, 660 (691 SE2d 875) (2010) (reiterating that the "mailbox rule" applies only to pro se inmates in habeas corpus appeals). Because the motions in arrest of judgment were untimely, we do not address their merits. See Mitchell v. State, 282 Ga. 416, 418-419 (651 SE2d 49) (2007).

5.      One of the jurors for Appellant's trial notified the court during voir dire that she knew the State's witness, Theresa Gurley, who was one of her physical therapy patients. The juror then told the court that she was "creep[ed] out" by the possibility that Appellant would know where she worked based on her answers to the voir dire questions. Appellant now asserts that his trial counsel (who represented him until the end of jury selection) provided

8

ineffective assistance in failing to challenge the juror for cause. To prevail on this claim, Appellant must show that his counsel's performance was professionally deficient and that, but for the deficiency, there is a reasonable probability that the outcome of his trial would have been more favorable to him. See Strickland v. Washington, 466 U. S. 668, 687, 694 (104 SCt 2052, 80 LE2d 674) (1984). Appellant has failed to carry his burden as to both prongs of the Strickland test.

At the motion for new trial hearing, trial counsel testified that he consulted with Appellant during jury selection and that Appellant had not wanted to strike this juror. See Taylor v. State, 302 Ga. 176, 178 (805 SE2d 851) (2017) ("[T]he decision as to which jurors to strike is a strategic decision that, if reasonable, will not support an allegation that counsel's performance was deficient."). Moreover, there is no indication that a challenge for cause would have been successful. After the juror indicated that she knew Gurley, the prosecutor questioned her, and the juror said that her professional relationship with Gurley would not affect her assessment of the evidence and that her concerns that Appellant would know where she worked would not affect her verdict. Because the record shows that the juror had not formed a "fixed and definite" opinion as

9

to Appellant's guilt, he cannot prove that he was prejudiced by trial counsel's failure to move to strike her for cause. See Bester v. State, 294 Ga. 195, 196 (751 SE2d 360) (2013) (explaining that a juror's knowledge of or relationship with a witness is a basis for disqualification only if it has created in the juror a fixed opinion of guilt or innocence or a bias for or against the accused).

6. When Gurley testified at trial, many of her responses were inconsistent with what she had told the police about Appellant during her recorded interview; she also claimed that she did not recall a number of incriminating statements about Appellant that she made during the interview. The State then presented evidence of Gurley's prior inconsistent statements through the testimony of the detective who had interviewed her and by playing relevant portions of the recording.[3] Appellant's hearsay objections to this evidence were overruled. He now contends that the hearsay rulings were erroneous and also claims that the playing of the recording improperly bolstered the detective's testimony, that the prior inconsistent statements were "beyond

_____

[3] After the recording of Gurley's interview was admitted into evidence, the prosecutor had technical difficulties playing it, so he had the detective testify about what Gurley had told her. The technical difficulties were then resolved, and pertinent segments of the recording were played for the jury.

10

the scope of [Gurley's] direct examination," and that the State improperly called Gurley as a witness for the sole purpose of introducing the evidence of her prior inconsistent statements to the police.

Given Gurley's inconsistent testimony at trial and her convenient memory lapses about the portions of her conversation with the police that implicated Appellant, her earlier statements were not hearsay but rather were properly admitted as prior inconsistent statements. See OCGA §§ 24-8-801 (d) (1) (A), 24-6-613 (b). See also Brewner v. State, 302 Ga. 6, 17 (804 SE2d 94) (2017) ("The failure of a witness to remember making a statement may provide the foundation for offering extrinsic evidence to prove that the statement was made."). Gurley was given an opportunity to explain or deny her prior inconsistent statements to the police, and Appellant had the opportunity to cross-examine her about those statements.

Because Appellant did not object at trial to the evidence of Gurley's prior statements on any ground other than hearsay, on appeal we review his additional claims only for plain error. See OCGA § 24-1-103 (d); Lupoe v. State, 300 Ga. 233, 243 (794 SE2d 67) (2016). To establish plain error, Appellant must identify an error that was not affirmatively waived, was clear and not open to

11

reasonable dispute, likely affected the outcome of the proceeding, and seriously affected the fairness, integrity, or public reputation of judicial proceedings. See Lupoe, 300 Ga. at 243. The recording was admitted to impeach Gurley, not to bolster the detective. Appellant has not identified any admitted prior statements that were outside the scope of Gurley's direct examination. And Gurley had some recollection of the relevant events. Moreover, in light of the compelling evidence presented at trial — including the evidence of Appellant's fingerprints on Richey's truck and in the getaway car and Gaither's testimony that he admitted shooting Richey — Appellant has not established that the errors he now alleges occurred probably affected the outcome of his trial. Thus, Appellant has not established plain error. See id. at 244.

7. After the State played the portions of the recording of Gurley's interview that contained her prior inconsistent statements, Appellant sought to play the entire recording for the jury, but the prosecutor objected on the ground of hearsay. The trial court told Appellant that he could introduce only the segments of the recording that would make complete the portions that had already been played, and Appellant was then permitted to play an excerpt in which Gurley told the police at the beginning of the interview that she was on

12

medication and did not know what was going on. Appellant did not object to the trial court's ruling, but he now contends that the court violated the so-called "rule of completeness," see OCGA §§ 24-1-106, 24-8-822,[4] by not allowing him to play the entire recording of Gurley's police interview. Our review is again limited to plain error. See OCGA § 24-1-103 (d).

"The [r]ule of [c]ompleteness prevents parties from misleading the jury by presenting portions of statements out of context, but it 'does not make admissible parts of a statement that are irrelevant to . . . the parts of the statement introduced into evidence by the opposing party.'" Jackson v. State, 301 Ga. 866, 869 (804 SE2d 367) (2017) (citation omitted). The trial court allowed Appellant to play an additional segment of the recording to show that Gurley's prior statements to the police may have been affected by medication. Appellant has not identified any other specific statements in the portions of the recording that the State played for the jury which needed to be explained by

---

[4] OCGA § 24-1-106 says, "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which, in fairness, should be considered contemporaneously with the writing or recorded statement." Similarly, OCGA § 24-8-822 says, "When an admission is given in evidence by one party, it shall be the right of the other party to have the whole admission and all the conversation connected therewith admitted into evidence."

13

playing the rest of Gurley's interview; instead, he broadly and baldly asserts that the whole recording would have shown the jury how "law enforcement manipulated" Gurley's statements by "intimidation and trickery." We see no error in the trial court's ruling on this issue, nor has Appellant established how the ruling harmed him. There was no plain error. See Lupoe, 300 Ga. at 244.

8. Appellant contends that the admission of the recording of Gurley's interview with the detective and the detective's testimony about the interview violated his Fifth and Sixth Amendment rights. Appellant did not object on these grounds at trial, and he has not supported this enumeration on appeal with any argument. We therefore decline to consider it. See Supreme Court Rule 22; Holmes v. State, 301 Ga. 143, 146 (800 SE2d 353) (2017).

9. During Appellant's cross-examination of the detective, he asked her whether the surveillance recording of the shooting showed "the shooter" getting into the victim's truck and touching the outside door handle. The detective responded, "I saw you get into . . . the truck" and "you actually touched right there near the handle at the bottom and I couldn't tell if you had a screwdriver in your hand or what was in your hand, but I have to admit you were very good at it, you got into that truck within four seconds." Appellant claims that this

14

testimony improperly invaded the province of the jury because the detective gave her opinion about the ultimate issue of Appellant's guilt. Once again, Appellant failed to object to this testimony, and we therefore review his claim only for plain error. See OCGA § 24-1-103 (d).

The detective's answers to Appellant's questions may have been too clever by half, but they did not violate the ultimate issue rule in the new Evidence Code, see OCGA § 24-7-704,[5] nor can Appellant show harm. The evidence of Appellant's guilt was compelling, and he cannot show that the complained-of comments likely affected the outcome of his trial. After all, the jury already knew that the detective had investigated the crimes and obtained a warrant for Appellant's arrest. That she believed Appellant was the shooter seen on the surveillance recording would have come as no surprise to the jury.

---

[5] OCGA § 24-7-704 says:
    (a) Except as provided in subsection (b) of this Code section, testimony in the form of an opinion or inference otherwise admissible shall not be objectionable because it embraces an ultimate issue to be decided by the trier of fact.
    (b) No expert witness testifying with respect to the mental state or condition of an accused in a criminal proceeding shall state an opinion or inference as to whether the accused did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

[A]lthough it may have been improper for [the detective] to share [her] subjective belief [that Appellant was the shooter seen on the surveillance recording] with the jury explicitly, any rational juror would have guessed that [the detective] believed as much without being told. As we have explained before, "[s]uch comments upon the patently obvious generally pose little, if any, danger of prejudice."

Tanner v. State, 303 Ga. 203, 209 (811 SE2d 316) (2018) (citations and punctuation omitted). See also Taylor v. State, 303 Ga. 225, 228 (811 SE2d 286) (2018) (pretermitting whether statements potentially expressing the opinions of the police officers who conducted the defendant's interrogation were admissible under OCGA §§ 24-7-704 and 24-4-403 and holding that the defendant failed to prove the harm prong of the plain error test).

10. During Appellant's cross-examination of Gaither, he asked several goading questions about her drug use and the reward money she received for her tip that led to his arrest. Gaither became emotional and said repeatedly, over the trial court's reprimands, "Y'all done killed somebody" and "Y'all going to hell." When the court's attempts to stop the testimony proved unsuccessful, the court asked the jury to leave the courtroom. After the jury exited, Appellant moved for a mistrial, which the court denied. When the jury returned, the court

16

gave a lengthy curative instruction directing the jurors to disregard everything they heard during Gaither's outburst.[6]  Appellant then preserved his mistrial motion.  He now contends that the trial court's instruction was insufficient to cure the prejudice caused by Gaither's outburst and that the court therefore should have granted a mistrial.  We disagree.

"'Measures to be taken as a result of demonstrations and outbursts which occur during the course of a trial are matters within the trial court's discretion unless a new trial is necessary to (e)nsure a fair trial.'"  Green v. State, 300 Ga. 707, 710 (797 SE2d 863) (2017) (citation omitted).  "Given the trial court's 'prompt, thorough, and curative action,' the trial court did not abuse its discretion by denying [Appellant's] motion for a mistrial."  Thomason v. State,

---

[6] The court instructed the jury:

[T]he outburst that you witnessed was unfortunate.  It was unacceptable.  It also is irrelevant to what you need to decide and so insofar as you recall anything about what Ms. Gaither may have been saying in terms of her thoughts at the time, or you wrote them down, you should disregard what it is that you wrote down or that you recall.  It was non-responsive.  It wasn't responding to a particular question.  And it was a situation where I probably should have suggested we all have a break before things boiled over the way they did.  And so I apologize for the extended break and we will proceed in a more orderly fashion for the rest of this examination.  But the important thing that you need to remember is my direction to you all that you are not to consider anything you may recall Ms. Gaither having said after we moved beyond a question and answer format and Ms. Gaither became frustrated and upset and continued to speak despite my direction and direction from the [bailiff] to not talk anymore.  I think we moved pas[t] that, you all need to move past that, and we're going to return to questions from [Appellant] and answers from Ms. Gaither.

17

281 Ga. 429, 433-434 (637 SE2d 639) (2006) (citation omitted) (holding that the trial court did not abuse its discretion by denying the defendant's mistrial motion and instead giving a curative instruction after the mother of the victim pointed at him and asked, "Why did you do it?"). See also Messer v. State, 247 Ga. 316, 323-325 (276 SE2d 15) (1981) (concluding that the trial court did not abuse its discretion by refusing to declare a mistrial and instead giving a curative instruction after the father of the victim lunged at the defendant and screamed, "you'll pay," "you're liable," and "you're going to get it").

11. Finally, Appellant contends that the trial court violated OCGA § 17-8-57 by expressing its opinion about venue and whether Richey was shot. Near the beginning of voir dire, the court told the jury, "The allegations in this case arise from a shooting that occurred in the parking lot outside of Kroger grocery store. It's the Kroger on Ponce de Leon Avenue near Ponce City Market that used to be City Hall East and the [Sears] Building next to the Beltline." Although Appellant did not object to this statement, he argues that the court lowered the State's burden to prove essential elements of his malice murder charge by telling the jury that a shooting occurred and where it occurred. Citing Rouse v. State, 296 Ga. 213, 214-215 (765 SE2d 879) (2014), he asserts that

because a violation of OCGA § 17-8-57 is subject to "super" plain error review, he need not show how he was injured by the error but only that the error occurred.  Rouse, however, was decided under the prior version of OCGA § 17-8-57, which was amended in 2015 to make certain violations of that statute subject to regular plain error review.[7]  See Brown v. State, 302 Ga. 454, 463 n.4 (807 SE2d 369) (2017).  The amended version of OCGA § 17-8-57 was in effect at the time of Appellant's trial in 2016, so we review his claim that the trial court improperly expressed its opinion as to whether venue and the shooting had

---

[7] The amended version of OCGA § 17-8-57 says:

(a) (1) It is error for any judge, during any phase of any criminal case, to express or intimate to the jury the judge's opinion as to whether a fact at issue has or has not been proved or as to the guilt of the accused.

(2) Any party who alleges a violation of paragraph (1) of this subsection shall make a timely objection and inform the court of the specific objection and the grounds for such objection, outside of the jury's hearing and presence.  After such objection has been made, and if it is sustained, it shall be the duty of the court to give a curative instruction to the jury or declare a mistrial, if appropriate.

(b) Except as provided in subsection (c) of this Code section, failure to make a timely objection to an alleged violation of paragraph (1) of subsection (a) of this Code section shall preclude appellate review, unless such violation constitutes plain error which affects substantive rights of the parties.  Plain error may be considered on appeal even when a timely objection informing the court of the specific objection was not made, so long as such error affects substantive rights of the parties.

(c) Should any judge express an opinion as to the guilt of the accused, the Supreme Court or Court of Appeals or the trial court in a motion for a new trial shall grant a new trial.

19

been proven only for plain error.[8]

The trial court framed its statement in terms of "allegations" and never mentioned the venue for the charges (Fulton County). But even putting that aside, Appellant has not shown that the court's statement orienting the prospective jurors to the case had any effect on the outcome of his trial. The State presented ample and undisputed evidence that Richey was shot, including the surveillance recording showing the shooting and expert testimony from a medical examiner. The prosecutor also elicited undisputed testimony from several witnesses that the crimes of which Appellant was convicted occurred in Fulton County. If anything, the court's statement aided Appellant, as the court's identification of the area where the shooting took place led to two prospective jurors being struck for cause on Appellant's motion because they said they frequented that neighborhood, knew about the murder and desired a conviction, and did not believe that they could be impartial. Accordingly, Appellant has not shown plain error. See Harris v. State, 302 Ga. 832, 835 (809 SE2d 723) (2018).

Judgment affirmed. All the Justices concur.

---

[8] In Willis v. State, 304 Ga. 122 (816 SE2d 656) (2018), we held that the amended version of OCGA § 17-8-57 applies to appellate review even of cases tried under the prior version of the statute. See id. at 128-129.

Decided June 29, 2018.

Murder. Fulton Superior Court. Before Judge McBurney.

Damarius Thompson, pro se.

Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Burke O. Doherty, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Aimee F. Sobhani, Assistant Attorney General, for appellee.

21