311 Ga. 573
FINAL COPY

S21A0438.  THOMAS v. THE STATE.

PETERSON, Justice.

Drexton Thomas appeals his convictions for malice murder and other offenses in connection with the shooting death of Jeffrey Douglas, Sr., and the aggravated assault of Jeffrey Douglas, Jr. (hereinafter, "Junior").[1] He argues that: (1) the evidence was

---

[1] The crimes occurred on June 28, 2013. In September 2013, a Fulton County grand jury indicted Thomas for malice murder (Count 1), three counts of felony murder (Counts 2-4), two counts of armed robbery  (one against Douglas (Count 5) and one against Junior (Count 10)), aggravated assault with a deadly weapon against Douglas (Count 6), one count of possession of a firearm by a convicted felon (Count 7), two counts of aggravated assault against Junior (Count 8 (pointing a gun at Junior) and Count 9 (hitting Junior with the gun)), and two counts of possession of a firearm during the commission of a felony (Count 11 for felonies committed against Douglas and Count 12 for felonies against Junior). After an October 2015 trial, a jury found Thomas guilty on Counts 1, 3, 6, 8, 9, 11, and 12, and not guilty on Counts 2, 5, and 10. Counts 4 and 7 were initially bifurcated but dismissed following the trial. In an order entered on November 6, 2015, the trial court sentenced Thomas to serve life in prison on Count 1, two concurrent twenty-year terms on Counts 8 and 9, and two five-year suspended terms for Counts 11 and 12 to run concurrently with each other but consecutively with the remaining counts. Count 3 was vacated by operation of law. The trial court initially entered a sentence on Count 6, but later issued a corrected sentence merging Count 6 with Count 1. Thomas filed a timely motion for new trial, which he later

insufficient to support his convictions as a matter of federal due process, (2) the trial court abused its discretion in denying his motion for new trial as the "thirteenth juror," (3) the trial court abused its discretion in denying Thomas's motion for mistrial based on a courtroom outburst, (4) his inculpatory custodial statement was obtained in violation of his *Miranda*[2] rights, (5) his trial counsel was ineffective, and (6) he is entitled to a new trial on the basis of cumulative prejudice. The evidence was sufficient to support Thomas's convictions and thus his due process and thirteenth-juror claims fail, the trial court properly handled the courtroom outburst, Thomas was given *Miranda* warnings before beginning his interview and the State was not obligated to give them again after a two-hour break, Thomas has shown no prejudice from any alleged ineffectiveness, and there are not multiple errors from which to accumulate prejudice. We affirm.

---

amended. Following a hearing, the trial court denied Thomas's motion on January 30, 2019. Thomas timely appealed; his case was docketed to this Court's term beginning in December 2020 and submitted for a decision on the briefs.

[2] *Miranda v. Arizona*, 384 U.S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

2

The trial evidence viewed in the light most favorable to the verdicts showed the following. Thomas and Douglas had known each other for years before June 2013. On June 27, 2013, the day before the shooting, Thomas and Douglas had an argument because Douglas believed that Thomas had been sending Douglas's drug customers to other dealers. The next day, Douglas, his girlfriend Geraldine Thompson, and others were at Douglas's house. Thompson's daughter and Junior were outside when Thomas suddenly came walking up the driveway, pointed the gun at Junior, pistol-whipped him, took his money, and at one point fired a shot. Thomas instructed Junior to "go get your daddy" because "that's who I want anyway." Thomas backed away from Junior after a woman called out to Thomas, pleading for Thomas not to kill Junior.

Douglas came to the door and ushered Thompson's daughter and Junior inside the house. Douglas tried to shut the door on Thomas, who was approaching, but Thomas stopped the door from closing with his foot. Thomas shot Douglas as Douglas was attempting to run into the kitchen. Douglas fell to the ground, and

3

Thomas rolled him over and took money out of Douglas's pockets. Thomas left the scene while threatening those present that he would be back if anyone reported what he did.

By the time the paramedics arrived, Douglas was dead. Douglas had been shot in the back and was not seen with any weapons prior to the shooting. Thompson had been inside the house during the incident, heard the commotion outside, witnessed Thomas shoot Douglas, and told the police that Thomas was the shooter.

Thomas was later arrested and, after being informed of his *Miranda* rights, confessed to two detectives that he shot Douglas. Although Thomas initially said to one detective that he shot Douglas because Douglas and Junior pulled a pistol on him and threatened him, he told another detective that he did not see Douglas with a weapon but assumed Douglas had one because Douglas and Junior had pulled a weapon on him earlier that day.[3] Thomas told the

---

[3] A defense witness testified that there was a separate argument on the morning of the shooting and claimed that Douglas had pulled a gun on him and Thomas that morning.

second detective that he shot Douglas because he was "pissed" and wanted payback for having a gun pulled on him. Video recordings of the interviews were played for the jury. Thomas told the detectives that he threw the gun used to shoot Douglas in a sewer drain, but the police could not find it there.

1. Thomas argues that the evidence was insufficient to support his conviction. His claim fails.

When evaluating the sufficiency of evidence, we must determine whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). In making that determination, "we view the evidence in the light most favorable to the verdict, and we put aside any questions about conflicting evidence, the credibility of witnesses, or the weight of the evidence, leaving the resolution of such things to the discretion of the [jury]." *Wilkerson v. State*, 307 Ga. 574, 574 (837 SE2d 300) (2019) (citation and punctuation omitted). "As long as there is some competent evidence, even if contradicted, to support

each fact necessary to make out the State's case, the jury's verdict will be upheld." *Scott v. State*, 309 Ga. 764, 766 (1) (848 SE2d 448) (2020) (citation and punctuation omitted).

Here, Junior testified that Thomas pointed a gun at him. See *Rich v. State*, 307 Ga. 757, 759 (1) (a) (838 SE2d 255) (2020) ("[T]he testimony of a single witness is generally sufficient to establish a fact[.]" (citation and punctuation omitted)). Thomas admitted hitting Junior with the weapon. Multiple eyewitnesses said that Thomas shot Douglas. And Thomas admitted that he shot Douglas in anger. Douglas was shot in the back and had no weapons on him. After assessing the credibility of the eyewitnesses and reviewing a video recording of Thomas's interviews, the jury was authorized to reject any claims that Thomas shot Douglas in self-defense or with an irresistible passion resulting from serious provocation, and to find beyond a reasonable doubt that Thomas was guilty of the crimes of which he was convicted. See *Corley v. State*, 308 Ga. 321, 322 (1) (a) (840 SE2d 391) (2020) ("[Q]uestions about the existence of justification are for a jury to decide[.]"); *Anderson v. State*, 248 Ga.

6

682, 683 (3) (285 SE2d 533) (1982) ("Whether or not a provocation, if any, is such a serious provocation as would be sufficient to excite a sudden, violent, and irresistible passion in a reasonable person, reducing the offense from murder to manslaughter, is generally a question for the jury.").

2. Thomas next argues that the trial court failed to fulfill its role as the "thirteenth juror" by failing to grant his motion for new trial. To the extent Thomas argues that the trial court failed to exercise its discretion as the "thirteenth juror," the record shows otherwise. In denying Thomas's motion for new trial, the trial court cited the correct legal standards, weighed the evidence, and found that the evidence overwhelmingly supported Thomas's guilt. See *Brockman v. State*, 292 Ga. 707, 714-715 (4) (b) (739 SE2d 332) (2013) (trial court's language that evidence was not "sufficiently close" to warrant new trial shows that court exercised its discretionary authority to not grant a new trial).

To the extent Thomas argues that the trial court exercised its discretion improperly, his argument presents nothing for us to

7

review. Only trial courts have discretion to sit as the "thirteenth juror." See *Wilson v. State*, 302 Ga. 106, 109 (II) (d) (805 SE2d 98) (2017). When asked to review the refusal to grant a new trial on such grounds, our review is limited to the *Jackson v. Virginia* standard, and we have already explained that the evidence was sufficient under that standard.

3. During the trial, one of Douglas's other sons, seated in the courtroom gallery, screamed at Thomas, "You killed my daddy, man. You killed my motherf***ing daddy, man." Thomas argues that the trial court erred in denying his motion for mistrial based on this courtroom outburst, because multiple members of the jury indicated that the outburst caused them concern. We disagree.

A trial court generally has broad discretion in deciding whether to grant a mistrial, and great deference is afforded to a court's determination that a mistrial was not necessary. See *Blake v. State*, 304 Ga. 747, 750 (2) (822 SE2d 207) (2018). The measures a trial court takes in response to a courtroom outburst are within the court's discretion unless a fair trial is not possible without a new

trial. See *Thompson v. State*, 304 Ga. 146, 154 (10) (816 SE2d 646) (2018); *Green v. State*, 300 Ga. 707, 710 (2) (797 SE2d 863) (2017). Generally, a trial court does not abuse its discretion when it takes "prompt, thorough, and curative action." *Thompson*, 304 Ga. at 154 (10) (citation and punctuation omitted). When juries are given curative instructions following such outbursts, they "are presumed to follow [them] in the absence of proof to the contrary." *Jones v. State*, 305 Ga. 750, 755 (3) (827 SE2d 879) (2019).

Here, in response to the outburst, the trial court removed the relatives of the victim from the courtroom, checked with the jurors as to how they felt, and received reassurance from all of them that the outburst would not impair their ability to be fair and impartial. Even the jurors who specifically said they were concerned by the outburst expressed a desire to continue serving. After denying Thomas's motion for mistrial, the trial court told the jury that the man who had made the outburst was excluded from the courthouse and instructed the jury to disregard the outburst. Under these circumstances, Thomas has failed to show that the trial court abused

its discretion in denying a mistrial. See *Thompson*, 304 Ga. at 154-155 (10) (holding the trial court's curative instruction sufficient where the court gave a lengthy curative instruction after a witness under cross-examination said repeatedly, "Y'all done killed somebody," and "Y'all going to hell"); see also *Messer v. State*, 247 Ga. 316, 323-325 (6) (276 SE2d 15) (1981) (concluding that the trial court did not abuse its discretion by refusing to declare a mistrial and instead giving a curative instruction after the father of the victim lunged at the defendant and screamed, "You'll pay," "You're liable," and "You're going to get it").

4. Thomas claims that the trial court erred in admitting his custodial statements from the second custodial interview because he was not re-advised of his *Miranda* rights and the detective who conducted that interview deployed "extremely coercive, combative and threatening conduct" in the interview. We disagree.

The record shows that Thomas had been advised of his *Miranda* rights prior to his first interview with one detective, and there was a break of about two hours between that interview and

10

the second interview. There is no dispute that the second interview was merely a continuation of the first. Without more, the two-hour break between the two interviews did not require Thomas to be re-advised of his *Miranda* rights. See *Mangrum v. State*, 285 Ga. 676, 678-679 (3) (681 SE2d 130) (2009) ("[T]he lack of a *Miranda* warning after [a two-hour] break is of no consequence, as [appellant] was informed of and waived his *Miranda* rights before the first interview and the second interview was part of a continuous series of interviews." (citation and punctuation omitted)); *Williams v. State*, 244 Ga. 485, 488 (4) (b) (260 SE2d 879) (1979) ("[T]he state was under no duty to repeat the *Miranda* warnings given the day before where, as here, the interviews were part of a continuing interrogation.").

Turning to the coercion argument, the video recording of the interview plainly contradicts Thomas's assertions. Thomas points to no portion of the video recording to show that the second detective was coercive. The detective spoke calmly and never raised his voice or threatened Thomas in any way during the interview. Nothing in

the video recording suggests "excessively lengthy interrogation, physical deprivation, brutality, or other such hallmarks of coercive police activity" that could render Thomas's statements involuntary. *Drake v. State*, 296 Ga. 286, 291 (3) (766 SE2d 447) (2014) (citation and punctuation omitted).

5. Thomas also argues that his trial counsel was ineffective for not renewing the motion for mistrial based on the courtroom outburst and thereby not preserving the issue for appeal. We disagree.

To prevail on a claim of ineffective assistance of counsel, Thomas must show both that his trial counsel's performance was deficient and that this deficiency prejudiced his defense. See *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). "To establish deficient performance, an appellant must overcome the strong presumption that his or her counsel's conduct falls within the broad range of reasonable professional conduct and show that his counsel performed in an objectively unreasonable way considering all circumstances and in

12

the light of prevailing professional norms." *Smith v. State*, 296 Ga. 731, 733 (2) (770 SE2d 610) (2015) (citation and punctuation omitted). To establish prejudice, an appellant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Thomas must prove both prongs of the *Strickland* test, and if he fails to prove one prong, "it is not incumbent upon this Court to examine the other prong." *Smith*, 296 Ga. at 733 (2) (citation and punctuation omitted). "In reviewing a ruling on a claim of ineffective assistance of counsel, we defer to the trial court's findings of fact unless they are clearly erroneous, but we apply the law to the facts de novo." *State v. Spratlin*, 305 Ga. 585, 591 (2) (826 SE2d 36) (2019).

Here, the trial court considered the merits of Thomas's motion for mistrial, denied the motion, told Thomas's counsel that she could renew the motion "if something else happens," and then gave the jury a curative instruction. Thomas does not allege on appeal that something else happened at the trial that required trial counsel to

again move for a mistrial based on the courtroom outburst, but argues that trial counsel potentially failed to preserve the issue by failing to renew the motion. See *Hartsfield v. State*, 294 Ga. 883, 886 (2) (757 SE2d 90) (2014) (concluding that the defendant waived challenge to denial of motion for mistrial where he failed to renew his motion following the trial court's admonishment of prosecutor and curative instruction). But even assuming that trial counsel's failure to renew the motion was deficient performance, Thomas fails to establish prejudice. Because we have concluded that the trial court did not abuse its discretion in denying the motion for mistrial, electing instead to take adequate curative measures, Thomas does not demonstrate a reasonable probability that the outcome would have been different if trial counsel had renewed the motion for mistrial. See id. at 887 (3) (a) (because trial court did not abuse its discretion in denying motion for mistrial where curative instruction was adequate, there was no prejudice from trial counsel's failure to renew motion).

6. Lastly, Thomas argues that he is entitled to a new trial on

the basis of cumulative prejudice. We disagree.

We recently recognized a new cumulative error rule in *State v. Lane*, 308 Ga. 10 (838 SE2d 808) (2020), whereby courts are to "consider collectively the prejudicial effect of trial court errors and any deficient performance by counsel — at least where those errors by the court and counsel involve evidentiary issues." Id. at 14 (1). But this cumulative prejudice analysis does not apply when, as here, there are not multiple errors to consider cumulatively. See *Beck v. State*, 310 Ga. 491, 499 (3) n.5 (852 SE2d 535) (2020).

*Judgment affirmed. All the Justices concur.*

Decided May 17, 2021.

Murder. Fulton Superior Court. Before Judge Ellerbe.

*Kenneth W. Sheppard*, for appellant.

*Fani T. Willis, District Attorney, Lyndsey H. Rudder, Richard B. Caplan, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ashleigh D. Headrick, Assistant Attorney General*, for appellee.